GUNTER *et al.* v. HENDERSON MOLPUS CO.*

(Division A. Feb. 27, 1928. Suggestion of Error Overruled March 12, 1928.)

[115 So. 720. No. 2ˆ921.]

1. GUARDIAN AND WARD. *Chancery court has power under statute to appoint guardian for minor whose only estate is right of action for damages; "estate, real or personal" (Hemingway's Code 1927, sections 2085, 2137).*

Under Hemingway's Code 1927, section 2085 (Code 1906, section 2403), chancery court has power to appoint guardian for minor whose only estate is right of action for damages, since words "estate, real or personal," are broad enough to cover every sort of property, including choses in action or rights of action, and claim for damages arising *ex delicto* is embraced within term "estate" as used therein, and section 2137 (Laws 1926, chapter 145, section 1), authorizing appointment of guardian for person entitled to money from Federal government, is not legislative construction that court does not have such power under section 2085, since section 2137 is not limited to minors, convicts, or persons of unsound mind.

2. GUARDIAN AND WARD.  *Chancery court may empower minor's guardian to compromise and settle minor's claim for damages at any time after grant of letters (Hemingway's Code 1927, sections 1805, 2103).*

Under Hemingway's Code 1927, section 2103 (Code 1906, section 2421), authorizing court to empower guardian to compromise claim due ward under same circumstances prescribed for compromise by executor or administrator, and section 1805 (Code 1906, section 2065), relating to authorizing executor or administrator to sell or compromise claims, chancery court may empower guardian to compromise and settle minor ward's claim or right of action for damages at any time after grant of letters, and need not wait until after twelve months.

3. RELEASE.  *Allegations to effect that plaintiff did not knowingly sign releases of claims for son's death held insufficient to charge fraud avoiding releases.*

Allegations that plaintiff was induced to sign releases discharging defendant from claims for damages for injury and death of plaintiff's son for himself and as guardian of minor brothers and sisters of deceased, either upon representation that it was mere formality to collect some sort of insurance carried by defendant employer on life of deceased son, or under belief that as an officer authorized so to do he was taking acknowledgments of other parties' signatures to papers, *held* too indefinite to constitute charge of fraud avoiding releases.

4. CONTRACTS.  *One cannot avoid contract because different from supposed, unless he was induced not to read or have it read by fraudulent representations.*

One cannot avoid contract on ground that he·did not read it or have it read and that supposed terms were different, unless he was induced not to read it or have it read to him by fraudulent representations made to him by the other party, on which he was entitled to rely.

---

*Corpus Juris Cyc. References: Contracts, 13CJ, p. 370, n. 25; Guardian and Ward, 28CJ, p. 1065, n. 29; p. 1124, n. 53; Release, 34Cyc, p. 1098, n. 75; As to power of guardian to compromise debt due to ward, see 12 R. C. L. 1125; 4 R. C. L. Supp. 786.

APPEAL from circuit court of Scott county.
HON. G. E. WILSON, Judge.

Suit by V. B. Gunter and others against the Henderson Molpus Company. From a judgment for defendant, plaintiffs appeal. Affirmed.

*U. B. Parker, Mize & Dudley* and *R. L. Lendon,* for appellant.

The chancery court had no authority to appoint a guardian for these minors. Section 2083, Hemingway's Code, 1917, provides how testamentary guardians may be appointed by a parent, if no such guardian has been appointed; section 2085 provides how and for whom one may be appointed and under this section one may be appointed by the chancery court for "a minor who has an estate real or personal." Appellants in the court below contended that the claim of these minors against appellee constituted no estate. In 1926 the legislature of the state of Mississippi, realizing that no guardian could be appointed for a minor who was not an orphan and had no estate, real or personal (and be it remembered that these minors were not orphans, but that their father and mother were both living and that they had no estate), passed chapter 145, Laws 1926, providing for the appointment of guardians to minors who might have claims against the federal government. It cannot be said that these minors had no claim against the government, because under the act of congress making provisions for these payments these minor children had claims as heirs of their father, but such claim was not considered personal property.

The chancery court has no authority whatever to authorize settlement like the one involved in this case until twelve months after the guardian has been appointed. The statute is express in its restrictions. Section 2103, Hemingway's Code 1927, expressly provides that "guardians may be empowered by the court or chancellor in vacation to sell or compromise claims due their

wards, on the same proceedings and under the same circumstances prescribed in reference to the sale or compromise by an executor or administrator of claims belonging to the estate of deceased person." Turning to section 1805 we find that "the court, or chancellor, in vacation, on petition for that purpose, may authorize the executor or administrator to sell or compromise any claim belonging to the estate which cannot be readily collected; but an order authorizing a sale of any claim shall not be made until after twelve months from the grant of the letters. The court or chancellor shall specify the terms, conditions and notice of such sale." Turning to the petition to the chancery court for authority to settle the claim of these appellants, which petition was filed by attorneys for appellees, without any notice or knowledge on the part of appellants, and was heard by the chancellor without the presence of either or any of the appellants, we find this statement "but such claim is one which cannot be readily collected, being doubtful both as to the liability of said Henderson Molpus Company and also as to the amount of damages, if any, recoverable." In drawing this petition able counsel for appellee were quoting the very words of the statute, which they thought and which has been generally thought authorizes the settlement of these claims. But does section 2103, read together with section 1805, authorize any such settlement? And did these sections ever intend for wrongdoers to employ their adjusters and their lawyers to prepare these petitions and appear before chancellors without any hearing whatever, and obtain any such authority as is attempted to be obtained in this case, in order to settle the claim of minor children? In *Long* v. *Shakleford,* 25 Miss. 559, the court held that a compromise settlement was good when made and entered into without fraud. A similar holding was made in 31 Miss. 346. In *Martin* v. *Tarver,* 43 Miss. 517, an administrator, acting in good faith is held competent to compromise or

renew securities for or postpone payments of debts to his intestate without the sanction of the probate court.

In *Montgomery* v. *Mutual Life Insurance Company,* 111 Miss. 6, 71 So. 162, the court held that a settlement of a policy for the cash surrender value thereof was within the authority of an administrator. The court there cited authority for the decision *Long* v. *Shackleford,* 25 Miss. 559, which was decided before we had a statute like the one we have now. Our statute is plain and if it means what it says, the chancery court had no authority to authorize this settlement and if such authority had existed why was the statute, chapter 145, Laws 1926, passed by the legislature? Appellees insist that *Fox* v. *Fairchild,* 133 Miss. 617 settles the question. In this case no such question was raised. Neither the appellant, appellee or the court raised, noted, or discussed the limitations on such authority of chancellors or chancery courts to settle claims before the expiration of twelve months. It seems that no one noticed or discussed this matter. We not only admit but contend that after the expiration of time when the court would have jurisdiction to do so the chancery court would have authority to authorize the settlement of such claim as a doubtful claim. But the statute does not authorize the chancery court or give it jurisdiction to pass upon the subject until twelve months after the appointment of guardian.

We now come to appellant's replication. This replication sets out facts to more than abundantly establish fraud and if fraud is established then the replication contains sufficient answer in law to the special plea. It is positively alleged that Mr. Gunter and his wife, when the papers were signed, were hoodwinked and did not read the papers and that the bondsmen did not know that they had ever signed any such bond; that Mr. Gunter did not know until this proceeding was begun that he had been appointed guardian or was the guardian of

his minor children, or that the money paid him was the property of his minòr children and was paid to him as guàrdian.

In *McRaney* v. *N. O. & N. E. R. R. Co.*, 128 Miss., 248, attorneys made a settlement under something like the same terms and conditions as was made in this case. The court held that "a judgment obtained by fraud is void and may be attacked collaterally, both in law and in equity. A reading of this case will be worth more to appellants' contention than a week's argument. In the *Huff* v. *Bear Creek Mill Company*, 116 Miss. 509, the court held that a settlement obtained by fraud and for an inadequate consideration, when properly pleaded, was a question of fact for the jury. See *Kansas City & C. Railroad Company* v. *Chiles*, 86 Miss. 361; *Welch* v. *R. R. Co.*, 70 Miss. 20; *Jones* v. *R. R. Co.*, 72 Miss. 22; *I. C. R. R.* v. *Johnston*, 205 Ala. 1, 87 So. 866.

The next question raised by the demurrer is that the replication sets up a collateral attack. This is amply and expressly settled in many cases, but especially *McRaney* v. *N. O. & N. E. Railroad Company*, 128 Miss. 248.

*Bozeman & Cameron,* for appellee.

It is the contention of appellants that under the common law and under these statutes the chancery court (section 1964, Hemingway's Code 1927; section 2137-9, Hemingway's Code 1927; section 1972, Hemingway's Code 1917), had no jurisdiction to appoint a guardian, and if it did, it exceeded its jurisdiction in authorizing a settlement before the expiration of twelve months from the granting of the letters. *Fox* v. *Fairchild*, 133 Miss. 617, 98 So. 61, decides both of these contentions against appellant. Appellants take the position that the points should not be ruled against them because the specific questions were not raised in *Fox* v. *Fairchild*. Both were necessarily involved, but they contend the court did not consider them. Lord Holt says that the word " 'estate' is *genus generalissimum* and includes all things real and

personal.'' Pollack denominates the term *"nomen generalissimum,* comprehending everything real and personal over which the testator had a disposing power.'' As used in our statute, the words ''estate, real or personal'' certainly comprise every sort of property that a minor might possibly own, including choses in action or rights of action. The code section relied upon by our adversaries as proof positive that our legislature never considered such a right of action as ''an estate.'' The argument they make is this: ''If the chancery court already had the power to grant letters of guardianship of an estate of a person entitled to receive merely a sum of money, why did the legislature in 1926 pass section 2137, Hemingway's Code 1927?'' A glance at this section and the two succeeding ones will show that they refer solely to the appointment of guardians to receive funds from the federal government. The chancery court is authorized in such cases to appoint guardians merely where ''the federal government refuses to pay or deliver such funds, money or property to such person and requests or demands a guardian of the estate of such person.'' It is perfectly evident that the legislature was merely trying to meet the requirements of the federal government in paying money and to greatly enlarge the class of those for whom guardians might be appointed. Our adversaries argue that the statute which gives the court the right to authorize a guardian to settle a claim restricts that right so that it may not be exercised within twelve months from the time of the appointment. This question was necessarily passed upon by the court in the *Fox-Fairchild case, supra.* The decree authorizing the settlement was entered either on the date of the issuance of the letters of guardianship, or before that, and that matter was brought to the court's attention.

The statute, Sec. 1805, Hemingway's Code 1927, Sec. 1730, Hemingway's Code 1917, gives the chancery court, or the chancellor, jurisdiction to authorize an executor or

administrator (and, by reference from section 2103 of Hemingway's Code of 1927 guardians) to sell or compromise claims, etc. This is contained in the first part of the first sentence and it will be plainly seen that the executor may do either of two authorized acts: He may sell, or he may compromise. The rest of that sentence is worthy of complete quotation: "but an order authorizing a sale of any claim shall not be made until after twelve months from the grant of the letters." Later on in the same section it is provided what the executor shall do "in compromising any claim." The last sentence has to do with the duty of the executor in "all sales and compromises." It is entirely plain, therefore, that the latter part of the first sentence, being that part after the semicolon, has reference only to a sale and not to a compromise. This is too plain for argument and we merely invite that the court read the section. If the section itself were not plain enough, its history shows that originally it carried the twelve months' restrictions as to compromises, as well as sales; but that by deliberate action of the legislature the restriction as to compromises was removed. This investigation also removes the foundation from the criticism of the line of cases cited by appellant, and makes them full and complete authority at this time. For the court's convenience we relist them at this point. *Long* v. *Shackleford,* 25 Miss. 559; *Gulledge* v. *Berry,* 31 Miss. 346; *Martin* v. *Turner,* 43 Miss. 517; *Anderson* v. *Gregg,* 44 Miss. 170; *Montgomery* v. *Life Ins. Co.,* 111 Miss. 6, 71 So. 162.

We call the court's attention to the statement of opponent's brief in this case: "We not only admit, but contend, that after the expiration of the time when the court would have jurisdiction to do so, the chancery court would have authority to authorize the settlement of such a claim as a doubtful one." We believe that the concession of opposing counsel should be acted upon and the first two points of attack of the special plea be eliminated.

Evidently the replication is intended as a pleading of confession and avoidance. It starts off by denying that the plaintiffs had executed and delivered releases to the lumber company, but it is evident that such denial is coupled with the subsequent allegations and that what the replication intends to do is to admit the charges of the special plea and seeks to avoid their effect by the charges of fraud contained in the special plea. The gist of the replication is that Gunter did not knowingly sign or execute any of these papers; that is to say that he did not know what the several papers were when he was signing them; that he blindly signed all of these numerous papers and documents at the request of Turner, without reading them or without trying to ascertain what they really were; but relying blindly upon the statement of Turner that they were papers with reference to some sort of insurance which was carried on the life of Minor Gunter by the Henderson Molpus Company. The replication further alleges that soon after the death of his son, Turner, introduced to him a Mr. Butts, as representative of the insurance company which carried insurance on plaintiff's son, and who stated to Gunter that he had come to pay plaintiff what the insurance company owed him on account of the death of his son, and assured the plaintiff that any settlement of the insurance would not affect the plaintiff's claim against Henderson Molpus Company for the death of his son. These facts being admitted, they wholly fail to show that the releases were procured to be executed by Gunter and his wife and by Gunter, as guardian for his minor children, by any fraud which under the law would avoid or vitiate them. Such facts, submitted to a court or to a jury, as proof of fraud would be wholly insufficient to support a verdict avoiding the released, and, therefore, the demurrer to the replication was properly sustained. The replication admits that V. B. Gunter, the father and the guardian was not an ignorant, uneducated man; but on the contrary

was a man of intelligence and business experience—above the average. This is the man who claims to have been defrauded by a statement that was utterly inconsistent with every document which he signed.

Gunter alleges in his replication that the guardianship was procured and the order of compromise was presented to the court and procured without his authority. This is contradicted and shown to be utterly untrue by the facts admitted in the replication as follows: Gunter admits that he signed the petition for letters of guardianship; that he signed the bonds; that he signed the oath; that he signed the petition for authority to compromise the claim. In *Continental Jewelry Co.* v. *Joseph,* 140 Miss. 582, 105 So. 639, the court said: "A person cannot avoid a written contract which he has entered into on the ground that he did not read it, or have it read to him, and that he supposed its terms were different, unless he was induced not to read it or have it read to him, by fraudulent representations made to him by the other party on which he was entitled to rely." See, also, *Colt Co.* v. *Odom,* 101 So. 853.

It will be noted that there is no tender back of the three thousand dollars received by the Gunters in this case. In the face of the total failure to show that the insurance company was due a penny and that this three thousand dollars was received and kept plaintiffs' case is condemned by numerous decisions of this court. *R. R. Co.* v. *Kropp,* 129 Miss. 616; 92 So. 691; *R. R. Co.* v. *Smith,* 112 Miss. 878; *R. R. Co.* v. *English,* 110 Miss. 575; 56 So. 665.

Argued orally by *U. B. Parker,* for appellant, and *B. F. Cameron,* for appellee.

Cook, J. This suit was instituted in the circuit court of Scott county against appellee, seeking to recover damages for the injury and death of Minor Gunter, a minor, about fifteen years of age, who died from injuries sus-

tained while working at or around an alleged defective and dangerous piece of machinery in appellee's sawmill. The appellants, plaintiffs in the court below, were the father, mother, and minor brothers and sisters of the deceased.

To the declaration, the defendant interposed a plea of the general issue, and gave notice thereunder that it would offer evidence to prove that it was guilty of no negligence, and that the negligence of the deceased was the sole and proximate cause of the injury and death. There was also filed a plea of accord and satisfaction in which it was averred that the plaintiffs and the defendant compromised and settled all claims and rights of action arising out of, or in any way connected with, the injury and death of said minor; that for a consideration of three thousand dollars, the plaintiffs, and each of them, executed and delivered to the defendant releases and acquittances discharging the defendant from any and all claims or demands resulting from the said injury and death; that in making said compromise and settlement and in executing and delivering said releases and acquittances, the adult plaintiffs acted for themselves, and the said minor plaintiffs acted through their father, V. B. Gunter, as guardian, and under the authority given by the chancery court of Scott county. As exhibits to this plea, there were filed copies of the releases executed by each of the plaintiffs, and also copies of the letters of guardianship issued to the said V. B. Gunter as guardian of said minor children, and the petition of said guardian for authority to compromise and settle the claim and right of action of each of said minors for the injury to and death of the said Minor Gunter, and also a copy of the decree made and entered by the chancery court of Scott county, authorizing such settlement.

To the said special plea, the plaintiffs filed a demurrer, assigning two grounds: First, that the chancery court had no jurisdiction to appoint a guardian for said mi-

nors, for the reason that they had no estate; and, second, the chancery court had no power to authorize a settlement of the claim until twelve months had elapsed after the appointment of the guardian. This demurrer was overruled, and, on appeal, the first and second assignments of error are based upon points raised by this demurrer. Upon the overruling of the demurrer to this special plea, the plaintiffs filed a replication to the plea averring facts in avoidance of the force and effect of the releases pleaded. We do not deem it necessary to here set out this lengthy replication, which, including the exhibits thereto, covers thirty full typewritten pages of the record, but it will be sufficient to say that when it is stripped of matters which are immaterial or purely evidentiary, it admits that V. B. Gunter and his wife signed the releases individually; that V. B. Gunter signed all the papers in the chancery court proceedings, including the petition for letters of guardianship of the minors, the four guardian bonds, the guardian's oaths, and the petition to the chancery court for authority to compromise and settle the claims of the minors; and that as guardian of said minors, he signed the several releases that were executed in their behalf, but avers that he did not knowingly sign any of said papers, either individually or as guardian; that trusting and relying upon the representations of a Mr. Turner, an agent of the appellee company, with whom he was closely associated in business, he signed these papers and documents either under the belief that he was taking acknowledgments to the papers for the said Turner, as he was officially authorized to do, and as he was accustomed to do, or under the belief that he was releasing some insurance company for money due under some sort of an insurance policy carried by the appellee company on the lives of its employees, including his deceased son, and that he had been induced by the said Turner to believe the execution of these papers was a mere formality required by such

insurance company before paying over to him the insurance money due him; and, therefore, that his signature to all of said papers and documents had been secured by fraud and deceit chargeable to the appellee.

The appellee demurred to the replication on the grounds, among others: First, that the said replication contains no sufficient answer in law to the matters and things set out therein; and, second, under the facts alleged in said replication, there is no sufficient showing of any fraud or deceit such as will warrant the attack on the proceedings set out in said replication. This demurrer was sustained, and the appellants having declined to plead further, final judgment in favor of the appellee was entered. From this judgment, this appeal was prosecuted.

The first contention of appellants is that the chancery court had no jurisdiction or authority to appoint a guardian for these minors, for the reason that they were not orphans and had no estate, and in support of this contention, special stress is laid upon the fact that the legislature of 1926 deemed it necessary or advisable to pass an act authorizing the chancery court to appoint a guardian for any person who is entitled to receive funds due by the federal government, this act being section 1, chapter 145, Laws of 1926 (section 2137, Hemingway's 1927 Code). The statute under which the guardian was appointed in this case is section 2403, Code 1906 (section 2085, Hemingway's 1927 Code), which reads, in part, as follows:

"When a guardian has not been appointed by the parent, or, if appointed, has not qualified, the chancery court of the county of the residence of a minor who has an estate, real or personal, shall appoint a guardian for him, giving preference in all cases to the natural guardian, or next of kin, if any apply, unless the applicant be manifestly unsuitable for the discharge of the duties."

Section 1, chapter 145, Laws of 1926 (section 2137, Hemingway's 1927 Code), having reference to the ap-

pointment of guardians where federal government funds are involved, provides that—

"The chancery courts may grant letters of guardianship of the estate of any person where it appears that such person is entitled to funds, money or property from the federal government or any of its departments, and where it appears that it is necessary that a guardian be appointed to receive such funds, money or property from the federal government, or where the federal government refuses to pay or deliver such funds, money or property to such person and requests or demands a guardian of the estate of such person before such property, money or funds will be paid or delivered."

In the case of *Fox* v. *Fairchilds,* 133 Miss. 617, 98 So. 61, the court approved a settlement by a guardian of his wards' claims for damages for the alleged wrongful injury to and death of their brother, which settlement had been authorized by a decree of the chancery court. In that case, it does not appear that the minors had any estate other than this claim for damages; but counsel for appellants now contend that the power or authority of the chancery court to appoint a guardian, under such circumstances, was not raised in that case, and that the only question litigated and decided was whether the statute empowered the chancery court or chancellor to authorize a guardian to compromise and settle claims arising *ex delicto*. If we concede that this question is not ruled by prior decisions of this court, and must be approached as one of first impression, still we are of the opinion that appellants' position is untenable. The statute authorizes the appointment of a guardian for any minor who has an estate, real or personal, and as used in this statute, the words "estate, real or personal," are broad enough, and were intended, to cover every sort of property, including choses in action or rights of action; and a claim for damages arising *ex delicto* is embraced within the term "estate" as used therein.

Appellants argue that the enactment of chapter 145, Laws of 1926, in reference to guardianships where federal government funds are involved, is, in effect, a legislative declaration that section 2403, Code 1906 (section 2085, Hemingway's 1927 Code), confers no authority on the chancery court to appoint a guardian where the minor has no estate other than a claim or right of action for damages; but, in our opinion, this contention is likewise without merit. The said chapter 145, Laws of 1926 (sections 2137 to 2139, inclusive, Hemingway's 1927 Code), authorizes the appointment of a guardian for any person who is entitled to money or property from any department of the federal government where it appears that it is necessary that a guardian be appointed to receive such money or property, or where the federal government requires the appointment of a guardian before such funds, money, or property will be delivered or paid. Under this statute the power of the chancery court to appoint guardians is not limited to minors, convicts, or persons of unsound mind, but a guardian may be appointed for "any person" who is entitled to funds, money, or property from the federal government if that government requires or demands a guardian of the estate of such person before such property, money, or funds will be paid or delivered. This section greatly enlarges the class for whom guardians may be appointed, and appears to be an attempt on the part of the legislature to meet any requirement that the federal government may interpose for the payment of money or the delivery of property to those entitled to it. But we do not think it can be interpreted as a legislative construction that section 2403, Code 1906 (section 2085, Hemingway's 1927 Code), confers no power upon the chancery court to appoint a guardian for a minor whose only estate is a right of action for damages.

The appellants next contend that the chancery court has no authority to empower a guardian to compromise

and settle his ward's claim or right of action for damages until after twelve months from the grant of letters of guardianship. The statute authorizing guardians to settle or compromise claims due their wards appears as section 2421, Code 1906 (section 2103, Hemingway's 1927 Code), and provides:

"Guardians may be empowered by the court, or chancellor in vacation, to sell or compromise claims due their wards, on the same proceedings and under the same circumstances prescribed in reference to the sale or compromise by an executor or administrator of claims belonging to the estate of a deceased person."

The section in reference to the sale or compromise by an executor or administrator of claims of a deceased person is section 2065, Code 1906 (section 1805, Hemingway's 1927 Code), and reads as follows:

"The court, or chancellor in vacation, on petition for that purpose, may authorize the executor or administrator to sell or compromise any claim belonging to the estate which cannot be readily collected; but an order authorizing a sale of any claim shall not be made until after twelve months from the grant of the letters. The court or chancellor shall specify the terms, conditions, and notice of such sale. In compromising any claim, the executor or administrator may receive property, real or personal, in his name as such, and he shall account for the same as assets of the estate. The executor or administrator shall report, in writing, all sales and compromises to the next term of the court."

It will be noted that under section 2421, Code 1906 (section 2103, Hemingway's 1927 Code), the chancery court, or the chancellor in vacation, has the authority to empower guardians to sell or compromise claims due their wards on the same proceedings and under the same circumstances prescribed with reference to the sale or compromise by an executor or administrator of claims belonging to the estate of a deceased person. When, in

order to determine what power may be conferred on a guardian to sell or compromise claims of his ward, we turn to the statute which empowers the court to authorize an executor or administrator to sell or compromise a claim, section 2065, Code 1906 (section 1805, Hemingway's 1927 Code), we find that the court, or chancellor in vacation, on petition for that purpose, may authorize an executor or administrator to sell or compromise any claim belonging to the estate which cannot be readily collected. However, an order authorizing the sale of a claim cannot be made until twelve months have elapsed after the granting of the letters testamentary, or of administration; but no such limitation is placed upon the power to compromise such a claim. The statute requires that the court, or chancellor, shall specify the terms, conditions, and notice upon which a sale may be made, but such is not required in an order authorizing a compromise. In compromising a claim, an executor or administrator— and consequently a guardian—may receive property, real or personal, in his name as such, but this is not allowed by this statute in the case of the sale of a claim. All sales and compromises must be reported to the next term of court. Thus, it appears that the provisions of the statute for the exercise of the power to order sales are different from those providing for a compromise of doubtful claims. It is expressly provided that there shall be no power to authorize a sale of such a claim until after the expiration of one year from the grant of the letters; but no such limitation is expressed in the case of a compromise, and there appears to be no reason why the power to authorize such a compromise may not be exercised at any time after the grant of letters.

That this is the proper construction of this statute is clearly indicated by an examination of the history of these statutes, and the form in which they have appeared since they were first adopted as the law of this state. The statute authorizing executors and adminis-

trators to sell or compromise claims was first enacted on March 5, 1846, and appears as sections 6 and 7, article 20, chapter 49, of Hutchinson's Mississippi Code. By section 6 of this article, it was provided that the probate court might, upon certain prescribed conditions, order any executor or administrator to sell or compromise any claim or claims due the estate of his, her, or their testator or testatrix; while section 7 provided that—

"No order of sale or compromise shall be made before the term of the court next succeeding that at which the petition is filed for that purpose . . . nor shall any order of sale or compromise of claims . . . be made until after the lapse of twelve months from the time at which the letters testamentary, or of administration, were granted."

By section 6 of article 21 of said chapter 49, the provisions of the above-mentioned sections 6 and 7 of the said article 20 were made applicable to guardians of minors. In the Code of 1857, the twelve-month limitation upon the power of the probate court to order sales of claims was continued; but this limitation upon the power to authorize the compromise of such claims was omitted. Article 95 of chapter 60 of that Code provided that—

"The probate court may, by decree, authorize any executor or administrator to sell or compromise any claims due the estate, which cannot be readily collected, . . . but no such order of sale shall be made, until twelve months have elapsed from the grant of the letters, and not until the next succeeding term after the petition has been presented."

In all succeeding Codes, the twelve-month limitation on the power to authorize the sale of such claims has been continued, but no such limitation on the power to compromise has again received statutory expression; and we do not think any such limitation may be implied from that fact that such limitation is imposed on the right to authorize sales.

The final question presented by the pleadings is whether or not the averments of the replication to the special plea of accord and satisfaction are sufficient to nullify the releases executed by the plaintiffs on the ground that they were fraudulently obtained, and therefore void. While there are no averments in the plea seeking to avoid the release executed by Mrs. V. B. Gunter, the mother of the deceased, it is averred that V. B. Gunter, individually, and as guardian of his minor children, did not knowingly sign the releases, or any of the papers in the proceedings in the chancery court to secure authority to compromise the minor's claim for damages. The replication admits that V. B. Gunter did actually sign all these fifteen separate papers and documents, but alleges that he did not knowingly sign them. There is an indefinite charge that he was induced to sign these documents by a Mr. Turner, superintendent of appellee's mill, either upon the representation that it was a mere formality to collect some sort of insurance carried by the appellee upon the life of the deceased, or under a belief that, as an officer authorized so to do, he was taking acknowledgments of other parties' signatures to these papers. Aside from the fact that the unreasonableness of these averments and the details set forth in support thereof would appear to be sufficient refutation thereof, we think the averments of this replication are too indefinite to constitute a charge of fraud which would avoid the releases. The replication shows that the said Gunter was an experienced business man. He admits that he signed these papers, fifteen in number, and had ample opportunity to read them. There is no specific charge that he was induced not to read the papers by any fraudulent representation on which he was entitled to rely; and it was held in the case of *Continental Jewelry Co.* v. *Joseph,* 140 Miss. 582, 105 So. 639, that—

"A person cannot avoid a written contract which he has entered into on the ground that he did not read it or

have it read to him, and that he supposed its terms were different, unless he was induced not to read it or have it read to him by fraudulent representations made to him by the other party, on which he was entitled to rely.''

The judgment of the court below will therefore be affirmed.

*Affirmed.*