McCubbins v. Morgan et al.

(In Banc. Dec. 10, 1945.)

[23 So. (2d) 926. No. 35977.]

R. H. & J. H. Thompson and Fulton Thompson, all of Jackson, and John T. Armstrong, of Hazlehurst, for appellant.

156

McNeil, Goss & Zama, of Hazlehurst, for appellees.

**Griffith, J.**, delivered the opinion of the court.

Appellees are the owners of a homestead of 97 acres in Copiah County. Appellant is a broker engaged in the business of procuring and selling oil and gas leases and other mineral rights. On March 17, 1944, he visited the home of appellees for the purpose of obtaining an oil, gas and mineral lease on their land. The opposite parties

were strangers, never having seen each other before. The trade was made and appellant filled in the name of the parties, the description and the consideration upon a printed form of lease in common use in this state, and made and signed a bank draft for the agreed amount, the draft reciting that it was in payment for oil lease on 97 acres. This being done, but before the oil and gas lease was signed, appellant proposed to buy from appellees, subject to the oil and gas lease, an undivided one-half interest in and to all the oil, gas and other minerals in, on or under the said lands, and appellant drew up a deed by filling in as aforesaid on a printed form, also generally used in this state, and made and signed another and separate bank draft for the consideration to be paid, this draft reciting that it was in payment for one-half mineral interest in the 97 acres. Appellees thereupon signed and delivered the lease and also the deed, carbon copies being delivered to them, and they accepted delivery of the drafts, together with $10 cash in payment.

Although able to read and write, appellees did not read the instruments, nor were they read to them. They did not request any explanation of the contents of the papers, nor was any explanation made to them. Apparently they were content to execute what, because of the printed forms, they could see others were executing in similar transactions; but they admit that they read the bank drafts before they took them to the bank and collected the money.

About four months thereafter, appellees filed their bill seeking to cancel the deed to the one-half mineral interest on the allegation that in the transaction wherein they had executed the two instruments above outlined, there had never been any mention of a deed to an undivided mineral interest, and that the deed to that interest had been procured by fraud, and that being unacquainted with such transactions, they were under the belief that they were executing only an oil and gas lease and that they never at any time had any intention to convey away an undivided interest in the minerals.

The allegation that the mineral sale was never mentioned and had no place in the transaction was not sustained by the proof, and the chancellor ruled against it as is seen by the following recitals in his decree:

"That the said complainants agreed to execute an oil, gas and mineral lease upon the said lands for said considertion; that the defendant then prepared an oil, gas and mineral lease covering said lands, and thereafter stated to the complainants that he desired to purchase a one-half interest in their minerals for the sum of $2.00 per acre, and thereupon prepared a mineral deed and royalty conveyance covering an undivided one-half (½) interest in and to all oil, gas and other minerals in, on and under the lands of the complainants, and at the same time presented to the complainants for their signatures both the oil, gas and mineral lease and the mineral deed and royalty conveyance which were contemporaneously executed by the complainants, and that at said time the defendant paid to the complainants the sum of $10.00 in cash and gave to them two drafts, each in the sum of $92.00."

This finding is sufficient, under this record, to dispose of the case because, knowing that an undivided mineral interest was involved in the transaction, appellees executed the deed, took the draft, and collected the money, and may not now avoid their action on the ground, as they seem to think, that they did not read the deed, and that the contents thereof were not explained. "A person cannot avoid a written contract which he has entered into on the ground that he did not read it or have it read to him, and that he supposed the terms were different, unless he was induced not to read it or have it read to him by fraudulent representations made to him by the other party, on which he was entitled to rely." Continental Jewelry Co. v. Joseph, 140 Miss. 582, 585, 105 So. 639; Gunter v. Henderson Molphus Co., 149 Miss. 603, 621, 115 So. 720; Fornea v. Goodyear Yellow Pine Co., 181 Miss. 50, 64, 178 So. 914; Alliance Trust Co. v. Armstrong, 185 Miss. 148, 163, 186 So. 633.

We may add, however, that the chancellor sustained the bill, and cancelled the mineral deed, on the ground, as we read the findings in the decree, that the taking of the mineral deed contemporaneously with the oil and gas lease was a fraud, in that it served to destroy nearly one half of the rental value to appellees in the lease, this apparently upon the idea that appellant was obliged by the lease to pay an annual rental of $97, which for nine more years of the ten-year lease term would be $873, when by the mineral deed appellee would get one half of this by his payment for the mineral deed of only $97. If the oil and gas lease had obligated appellant to pay an annual rental of $97 for nine more years, there might or might not be good ground for the decree, as to which we express no opinion, but the lease imposed no such obligation upon appellant. The lease instrument, initially effective for one year, gave an irrevocable option to appellant to renew the lease, for successive terms of one year each, the renewal to be made before the expiration of each successive annual period throughout the ten years by the annual payment of $97, but did not obligate him to do so, and so far as obligated, appellant may have never thereafter paid a cent on the lease. The taking of an oil and gas lease, and at the same time a deed to an undivided mineral interest for an additional consideration, is not an unusual transaction in the oil and gas business in this state, and we must assume that it is regarded as legitimate, there being no proof to the contrary in this record.

Reversed and decree here for appellant.