KOENIG v. CALCOTE *et ux.*

(In Banc.    April 22, 1946.)

[25 So. (2d) 763.    No. 36092.]

436

Jones & Stratton, of Brookhaven, and **R. B. Shults** and **Ralph Shank**, both of Dallas, Texas, for appellant.

438

A. A. Cohn, R. P. Phillips, Jas. F. Noble, and Tullius Brady, all of Brookhaven, for appellees.

Wells, Wells, Newman & Thomas, of Jackson, amici curiae.

**Robert L. Genin,** of Bay St. Louis, amicus curiae.

444

James A. Alexander, of Jackson, R. W. Heidelberg, M. M. Roberts, and Tom P. Caldwell, all of Hattiesburg, and Rex G. Baker, Robert F. Higgins and H. P. Pressler, all of Houston, Texas, amici curiae.

Argued orally by R. L. Jones, for appellant, and by A. A. Cohn, for appellees.

McGehee, J., delivered the opinion of the court.

This is a suit to cancel a mineral deed executed by the appellees, Boyd Calcote and wife, on October 4, 1935, in

favor of the appellant, E. J. Koenig, for an undivided one-half interest in all of the oil, gas and other minerals under approximately 238 acres of land owned by them in Lincoln County, on the ground that the said instrument is alleged to have been obtained through fraud.

The conveyance in question was made subject to an outstanding oil and gas lease held by the Sun Oil Company, executed on October 12, 1934, and all of the material provisions thereof are such as are common to the better forms of mineral deeds when taken subject to an oil and gas lease. At least such is the view expressed in 3 Summers on Oil and Gas, Perm. Ed., p. 502, sec. 606. In addition to the granting, warranty and habendum clauses which are in the language usually employed in formal conveyances of real estate, the deed contains the following provisions:

"Said land being under an oil and as lease executed in favor of Sun Oil Company, it is understood and agreed that this sale is made subject to the terms of said lease and/or any other valid lease covering same, but covers and includes one half of all of the oil royalty and gas rental or royalty due and to be paid under the terms of said lease, in so far as it covers the above decribed land.

"It is understood and agreed that one half (½) of the money rentals, which may be paid, on the above described land, to extend the term within which a well may be begun under the terms of said lease, is to be paid to the said Grantee; and, in event that the above described lease for any reason becomes canceled or forfeited, then and in that event, Grantee shall own one-half of all oil, gas and other minerals in and under said lands, together with a like——(½) interest in all bonuses paid, and all royalties and rentals provided for in future oil, gas and mineral leases covering the above described lands."

As heretofore stated, the cancellation of the conveyance was sought on the ground of alleged fraud on the part of the grantee Koenig in its procurement. That issue alone is presented by the bill of complaint and con-

stitutes the sole ground relied on in the trial court by the appellees for relief, but the answer of the defendant Koenig sets up the defense of laches, the statute of limitation, and the question of whether or not there was a subsequent ratification of the deed by the grantors after being advised of its import.

The testimony is in sharp conflict as to whether or not at the time of the execution of the instrument in question the grantee represented it to be a mere lease, and it is also disputed as to whether or not he explained its provisions which are found to be to the contrary. The trial court did not find as a fact that the alleged fraudulent representations were made, or that the grantors were induced by any misrepresentations not to read the deed before executing the same. But on the contrary the court found that fraud in the legal sense had not been shown; although the court was of the opinion that obviously the grantors did not have nor could have had the import of the conveyance in mind, as written, at the time they signed the same.

However, this Court held in the case of McCubbins v. Morgan et al., 199 Miss. 153, 23 So. (2d) 926, 927, that relief against a conveyance cannot be had merely on the ground that the grantor "did not read the deed, and that the contents thereof were not explained." In support of this announcement the Court quoted its former holding to the effect that "A person cannot avoid a written contract which he has entered into on the ground that he did not read it or have it read to him, and that he supposed the terms were different, unless he was induced not to read it or have it read to him by fraudulent representations made to him by the other party, on which he was entitled to rely",—citing the cases of Continental Jewelry Co. v. Joseph, 140 Miss. 582, 585, 105 So. 639; Gunter v. Henderson Molpus Co., 149 Miss. 603, 621, 115 So. 720; Fornea v. Goodyear Yellow Pine Co., 181 Miss. 50, 64, 178 So. 914; Alliance Trust Co. v. Armstrong, 185 Miss. 148, 163, 186 So. 633.

Therefore, unless the trial court had found that the proof was clear and convincing to the effect that the grantors in the instant case were induced not to read the conveyance or have it read to them by reason of fraudulent representations of the grantee as to the nature and character of the instrument, then the action of the court in failing to cancel the same on the ground of fraud cannot be reversed, unless under our view of the evidence the failure to so find was manifestly wrong.

The trial court held, however, that the deed should be canceled upon the theory that the same was not only subject to, but fed upon and by its own terms expired with the oil and gas lease of the Sun Oil Company; that the oil and gas lease did not "for any reason become cancelled or forfeited," but was kept in force to the end by the payment of the annual rentals due; that since the oil and gas lease gave to the Oil Company the exclusive right to explore for and produce oil, gas and other minerals during the life of such lease, and reserved only a one-eighth thereof as a royalty, it conveyed seven-eighths of the same to the said lessee, and that, therefore, the lessors did not have left to them such an interest therein as to entitle them to convey by warranty deed a one-half of all the oil, gas and other minerals to the appellant Koenig on October 4, 1935; and further held that the last paragraph hereinbefore quoted from the mineral deed to Koenig merely provided for an enlargement of his estate from the "one-half of the one-eighth of the oil and gas" to a one-half of all of the oil and gas in place in the event the Sun Oil Company should forfeit its lease during the ten year primary period thereof, and that this condition precedent did not happen; and he, therefore, further held that the mineral deed should be canceled as a cloud upon the title of the Calcotes in its entirety, notwithstanding that he had found that it had at least conveyed to Koenig a one-half of the one-eighth of the oil and gas reserved in the lease in favor of the Sun Oil Company.

The foregoing conclusions of the trial court seem to have not taken into account a provision in the oil and gas lease to the effect that "this lease shall remain in force for a term of ten years from this date, called primary term, and as long thereafter as oil, gas or other mineral is produced from said land, or as long thereafter as lessee shall conduct drilling or re-working operations thereon with no cessation of more than sixty consecutive days until production results, and after production results, so long as such mineral is produced." Said conclusions also fail to take into account the fact that the estate held by the Sun Oil Company at the time of the execution of the deed was a determinable fee, Lloyd's Estate et al. v. Mullen Tractor & Equip. Co., 192 Miss. 62, 4 So. (2d) 282, and authorities therein cited, and also the Texas cases of Hager et al. v. Stakes et al., 116 Tex. 453, 294 S. W. 835; Caruthers v. Leonard (Tex. Com. App.), 254 S. W. 779; and Hogg v. Magnolia Petroleum Co. et al. (Tex. Com. App.), 267 S. W. 482; the trial court's conclusions also fail to take into account that when the Calcotes executed the oil and gas lease in favor of the Sun Oil Company they had left to them, first, a reversionary fee interest in the oil, gas and other minerals, if and when the oil and gas lease should "for any reason" become canceled or forfeited, second, the right to receive the rentals and royalties during the life of the lease, and, third, the fee-simple title to the soil, Armstrong v. Bell, 199 Miss. 29, 24 So. (2d) 10, and 3 Summers Oil and Gas, Perm. Ed., p. 486, sec. 601, wherein Mr. Summers states that "it necessarily follows that after a fee owner of land has leased it for oil and gas purposes he has three distinguishable legal interests in the land and minerals. He has ownership of the land subject to the lease, the right to receive the rents and royalties under the lease, and a reversionary fee interest in the minerals in place." This reversionary fee interest in the minerals in place, or any part thereof, is capable of conveyance apart from the ownership of the land.

The cash consideration provided for in the oil and gas lease is the sum of $23.85 and the further payment of a like amount annually as delay rental. The lease was not canceled or forfeited by reason of a failure to pay the annual rental, but it was canceled and forfeited, or at least forfeited by the failure of the lessee to have the land in production at the expiration of the ten year primary period and by its failure to be then engaged in conducting any drilling operations thereon. If the land had been in production at the expiration of the ten year period, the lease would have remained in force and effect so long as production continued. Therefore, the lessee forfeited its right under the lease by reason of the fact that a producing well was not in existence at the expiration of the primary term. Having the land in production would have deferred the end of the term just as effectually as the payment of rentals would have done during the said period.

The granting clause in the mineral deed to Koenig is not unlike that employed generally in conveyances of the mineral fee or interest therein, according to 7 Summers Oil and Gas, Perm. Ed., sec. 1461 et seq. Nor is the mineral deed here in question at all dissimilar in its material aspects and provisions to that involved in the case of Patek v. Duncan, decided by the Court of Civil Appeals of Texas on February 10, 1944, reported in 178 S. W. (2d) 577, 579, rehearing denied by the Supreme Court of Texas March 1, 1944, wherein the Court said that ''the effect of the execution and delivery of said deed by William Patek to Rose and Sample, was to vest in Rose and Sample the fee simple estate to an undivided half of the minerals, except as the express words used in said deed imposed a limitation upon the estate thereby granted.'' The Court then pointed out that the limitation imposed by the deed upon the estate thereby granted, which prevented it from being a fee-simple estate of the oil, gas and other minerals, was the limitation that the conveyance was made subject to an oil and gas

lease in favor of the Gulf Production Company, and that the conveyance vested in the grantees a fee-simple estate to an undivided one-half interest in the minerals, less the estate vested in the said Gulf Production Company in virtue of its lease. The Court therefore said, "It necessarily follows that, when the determinable fee to the minerals was lost by the Gulf Production Company because the lease terminated at the expiration of its primary term, Rose and Sample then owned the fee simple estate to an undivided half interest of the minerals, free of the said outstanding determinable fee to the minerals."

Also in the case of Olvey et al. v. Jones et al. (Tex. Civ. App.), 95 S. W. (2d) 980, the Court construed a deed similar in all of its essential features to the one here involved, and held that under such a conveyance the grantee was entitled to a one-half undivided interest in the royalty, delay rentals and in the possibility of reverter.

To the same effect is the holding in the case of Segars et al. v. Goodwin et al., 196 Ark. 221, 117 S. W. (2d) 43, wherein the Court said: "Where landowner conveyed an undivided one-half interest in all oil, gas, and other minerals in land, subject to a prior oil lease, and an undivided one-half interest in all oil royalties and gas rentals due under the excepted lease, the purchaser became the owner of an undivided one-half interest to the oil, gas, and other minerals and was entitled to one-half interest in royalties from excepted lease, and, if a forfeiture of the excepted lease should occur, the purchaser and the owner of the premises would be joint owners of all minerals under the lands, each owning a one-half interest."

We are, therefore, of the opinion that the appellant acquired under his deed of conveyance at the time of the execution and delivery thereof an undivided one-half interest in the reversionary fee in the minerals in place and that upon the forfeiture of the outstanding oil and

gas lease in favor of the Sun Oil Company this interest ripened into a fee-simple title in a one-half undivided interest in all of the oil, gas and other minerals in place, and that by virtue of the express provisions of the deed of conveyance he was entitled to one-half of the rents and royalties under the existing lease and under any future oil, gas and mineral leases covering the said land, as well as one-half of the money rentals, if any such additional sum had been paid to extend the terms within which a well may be begun under the terms of the lease or leases. From a final decree to the contrary, canceling the mineral deed as having expired by its own terms, the grantee Koenig has prosecuted a direct appeal, and from a finding of fact to the effect that there was no fraud practiced in procuring the deed the grantors have prosecuted a cross-appeal.

But whether or not there was fraud practiced in procuring the deed is not controlling in the instant case for the reason that the grantors were advised on December 18, 1936, by letter from the Sun Oil Company that it had been furnished evidence that the grantee Koenig held a "one-half fully participating mineral deed" from them, and "which entitled him to receive one-half of the rental which we may pay under our lease." That "the October 12th, 1935," annual rental was paid by checks, "one-half or $11.93, to you and Mrs. Calcote, which the writer has before him endorsed by you and Mrs. Calcote and the other half to E. J. Koenig." The letter further stated that "the October 12, 1936, annual rental was paid in the same manner and amount, except that the 1936 rental of $11.93 to which you and Mrs. Calcote were entitled, was placed to your credit in the Brookhaven Bank & Trust Company, Brookhaven, Mississippi." This letter from the Oil Company was in response to an inqury from Mr. Calcote on behalf of himself and wife, which stated that "we have received the first check of $11.93 (the 1935 check), but we have not received the second check (the one for 1936 which had been placed to his credit at

the bank as aforesaid)." Moreover, when testifying at the trial, Mr. Calcote was asked, "How did you ascertain that you had signed a mineral deed instead of a lease, and when did you find it out?" and he replied that he "heard it talked in the community when my check was split, that Mr. Koenig had executed a. mineral deed on us and that he was going to draw half of our rental. When that check came split, that is when I wrote the Sun Oil Company that I didn't execute any part of my rentals to Mr. Koenig."

Thereafter, the said grantors continued to receive annually only one-half of the $23.85 provided for as rental under the oil and gas lease held by the Sun Oil Company throughout the remainder of the ten year period, and without further protest to anyone, the checks in that behalf having recited that the $11.93 was being paid as rental for "Und. ½ Int. in 238.5 acres" or as "rental for 238.5 acres, your portion." Then too, the mineral deed was of record at the county courthouse in 1936 when Mr. Calcote "heard it talked around in the community, when my check was split, that Mr. Koenig had executed a mineral deed on us," it having been shown that numerous other conveyances of like nature had been obtained by Mr. Koenig in the community where the Calcotes reside. They thus had notice of facts and circumstances which in the eye of the law was equivalent to knowledge of all the facts a reasonably diligent inquiry would disclose.

In 12 C. J. S., Cancellation of Instruments, sec. 38, p. 996, it is stated that "where a party, with knowledge of facts entitling him to rescission of a contract or conveyance, afterward, without fraud or duress, ratifies the same, he has no claim to the relief of cancellation. An express ratification is not required in order thus to defeat his remedy; any acts of recognition of the contract as subsisting or any conduct inconsistent with an intention of avoiding it, have the effect of an election to affirm."

We are, therefore, of the opinion that the decree of the trial court should be reversed and a judgment rendered here for the appellant on the direct appeal, and that the case should be affirmed on the cross-appeal.

So ordered.