## GUICE v. BURRAGE et al.

### DAVIS et al. v. SAME.

### JAMES v. SAME.

### HERRING v. SAME.

#### Nos. 11579–11582.

Circuit Court of Appeals, Fifth Circuit.
June 27, 1946.

Rehearing Denied July 29, 1946.

Luther A. Whittington and G. H. Brandon, both of Natchez, Miss., for appellants.

M. E. Ward, of Vicksburg, Miss., and Thos. B. Ramey, of Tyler, Tex., and Alfred McKnight, of Fort Worth, Tex., for appellees.

Before McCORD, WALLER, and LEE, Circuit Judges.

LEE, Circuit Judge.

Appellants, plaintiffs below, brought separate suits to cancel certain deeds purportedly conveying mineral interests in their property to one W. G. Burrage. W. G. Burrage acquired an oil, gas and mineral lease from each of appellants: from Elizabeth Guice, plaintiff in the first action, and her husband, S. L. Guice,[1] on December 7, 1938; from Finus Herring and Cordelia Herring, plaintiffs in the sec-

---

[1] After the lease was executed, S. L. Guice died and left as his sole heir at law his wife, Elizabeth Guice.

ond action, on December 2, 1938; from Monroe Davis and Hattie Davis, plaintiffs in the third action, on December 2, 1938; and from Foster James, plaintiff in the fourth action, on December 15, 1938. Finus Herring, Cordelia Herring, Monroe Davis, Hattie Davis, and Foster James are Negroes, illiterate and inexperienced in business affairs. At the time of the execution of each of the four oil and gas leases, Burrage induced each lessor to sign a second instrument which purportedly conveyed to Burrage one-half of the oil, gas and other minerals under the leased land. Burrage in each instance fraudulently represented that this instrument, which was placed beneath the lease, was a copy of the oil and gas lease the fee owner was then executing. Burrage never made an offer to the plaintiffs to buy their mineral rights, and they never intended to sell any mineral rights. No consideration for mineral rights was paid. After their execution, the mineral leases and the mineral deeds were duly recorded.

While each plaintiff signed what appears now to be a mineral deed, there is no evidence that the instrument when signed was anything other than a blank sheet of paper. The mineral deed in each instance is on a printed form headed "Royalty Conveyance," and all the language thereof except the date, the consideration, the parties, and the description of the property is in print. Plaintiffs never acknowledged the signing and delivery of the instruments. The alleged deeds are copies of a standard form and differ only in respect to the date, the consideration, the parties, and the description of the property. Each deed states that the land concerned was at that time under an oil and gas lease executed in favor of W. G. Burrage, and that the royalty conveyance was made subject to the terms of said lease. Each deed conveyed, in addition to one-half of the minerals, one-half of the royalty under each of said leases and entitled the grantee to one-half of the renewal rentals.

The signature of J. E. Spalding appears on each deed as the signature of a witness to the conveyance, and it also appears as the subscribing witness to an acknowledgment under each of the instruments. In these acknowledgments J. E. Spalding swore that he saw the fee owner sign and deliver each deed to W. G. Burrage, and that he signed his name as a witness thereto in the presence of each grantor and in the presence of the other subscribing witness. J. E. Spalding was not present at the execution of these alleged mineral deeds but at a later date added his signature as a witness.

On December 15, 1938, Burrage conveyed to C. J. Davidson 1/8 of the oil, gas and other minerals under the above-mentioned tracts of land. On January 25, 1939, Burrage conveyed to R. R. Wortham a 1/8 interest in the same minerals. On January 9, 1939, Burrage conveyed to W. B. Powell a 1/8 interest in the minerals (later inherited by his widow, Vivian Elbert Powell). On February 21, 1939, Burrage conveyed to Horace Mills a 1/16 interest in the same minerals. On March 29, 1939, Horace Mills conveyed this 1/16 interest to Standard Accident Insurance Company of Detroit, Michigan. On February 21, 1939, Burrage conveyed the remaining 1/16 of the minerals to J. M. Shimer.

The acreage in the Monroe Davis lease was 170 acres, in the Foster James lease 200 acres, in the Finus Herring lease 170 acres, and in the Elizabeth Guice lease 250 acres. Each lease was for a term of ten years. In these leases the annual rentals for deferred drilling were respectively $17, $20, $17, and $25. The Monroe Davis mineral deed recited a consideration of $1.00; the other mineral deeds recited a consideration of $10; no other consideration was recited. None of the defendants acquiring from Burrage saw the mineral deeds from the fee owner to Burrage, and only W. B. Powell saw photostatic copies thereof. None of the defendants examined the records as to the title on the property. Burrage, although made a party defendant, filed no answer and was not a witness. While there is no testimony as to what the market value was in 1939 or 1940, George Mitchell, a broker, testified that he had paid Burrage 50¢ per acre

when he bought for his customers and that he had received, when he sold, $1.75 to $2.00 per acre.

Monroe Davis discovered in October of 1941 that a deed conveying one-half of the minerals on his property stood on the records; a week prior thereto he and his wife received a check in payment of two delay rentals on one-half interest in the minerals under their property. Finus Herring discovered in 1940 that a deed conveying one-half of the minerals on his property stood on the records; Finus Herring and Cordelia Herring accepted in 1941 and again in 1942 payments representing delay rentals on one-half interest in the minerals under their property. Elizabeth Guice and her husband knew in 1940 that Burrage or other parties were getting one-half of the deferred rental payments on their property; Elizabeth Guice and her husband accepted in 1941 and 1942 payments representing delay rentals on one-half interest in the minerals under their property. Foster James in the fall of 1943, learned that he was entitled to only $10 deferred rentals instead of the $20 he had expected under the lease he had given Burrage; Foster James accepted on December 13, 1943, a payment representing delay rentals on one-half interest in the minerals under his property.

Plaintiffs, residents of Mississippi, brought their suits in Chancery Court of Franklin County, Mississippi, against W. G. Burrage, R. R. Wortham, C. J. Davidson, W. B. Powell, J. M. Shimer, Horace Mills, and John C. Robbins, Jr., all residents of Texas, and the Standard Accident Insurance Company of Detroit, Michigan, a Michigan corporation.[2] On the ground that a diversity of citizenship existed between the parties and that the amount in controversy exceeded $3,000, the defendants removed the causes to the court below, where they were consolidated and tried without a jury.

The court found: that W. G. Burrage perpetrated a fraud upon each of the plaintiffs; that the evidence failed to show that the defendants had any notice whatever of the fraud perpetrated by Burrage; that the plaintiffs, therefore, were not estopped, as a matter of law, or guilty of laches, as a matter of law; that the defendants were chargeable with knowledge of the consideration recited in the deeds taken by Burrage; that the consideration was not so grossly inadequate as to put the prospective purchasers on notice of any defects; that there was no standard market value for royalty conveyances at the time of the execution of these conveyances; that the defendants are innocent purchasers for value, without notice, and the consideration paid by Burrage was not so inadequate as to excite suspicion; and that, since the plaintiffs signed their names thereto, the deeds were not forgeries. Upon these findings the court below dismissed the complaints on the merits and rendered judgment for the defendants.

The appellants argue that the court erred for the reasons that (1) the deeds are forgeries and void; (2) the deeds were undelivered and void; and (3) the conveyances on their faces suggested fraud and over-reaching.

Under Mississippi law the mineral deeds were not forgeries. When the execution of a mineral deed is obtained by a lessee upon his false representation that the instrument being executed is a copy of a mineral lease, the deed is a voidable, fraudulent conveyance and not a void, forged conveyance.[3] The plaintiffs on this appeal attempt to distinguish their case on the ground that, when Burrage obtained the deeds from the fee owners, the attesting witness who acknowledged the execution of the deeds was not present at the execution of the deeds. The plaintiffs argue that, with proof that the attesting witness was not present at the execution of

---

[2] The District Court dismissed plaintiffs' claim for cancellation against John C. Robbins, Jr., assignee of the Davis, James, and Guice leases, with prejudice, on the ground no evidence of fraud existed with reference to those leases. Plaintiffs have not appealed from that dismissal.

[3] Lee v. Boyd, 1943, 195 Miss. 794, 16 So.2d 30; and Hafter et al. v. Strange, 1887, 65 Miss. 323, 3 So. 190, 7 Am.St. Rep. 659.

the instruments, (1) the defendants now have the burden of proving that the instruments signed by the plaintiffs or their predecessors were complete at the time of execution and were not later materially altered; and (2) the defendants have the burden of proving a valid, legal delivery. The distinction urged by the plaintiffs finds no support in the jurisprudence. In Kerr v. Freeman, 1857, 33 Miss. 292, the court held that where a bill is filed to cancel a deed upon the ground that it was never executed and is a cloud upon the title of the plaintiffs, it is the plaintiff's duty to prove its non-execution.

In Lee v. Boyd, supra, on facts similar to those presented herein, the court held that the defendants could use their status as bona fide purchasers for value to defeat a suit by the plaintiffs for cancellation of the instrument involved. In the present suits the court below has found that the defendants were bona fide purchasers for value. This finding has ample support in the record. As bona fide purchasers for value, legal title has vested in defendants. In such circumstances the equities urged by plaintiffs are unavailing. The record further shows that all plaintiffs except possibly Monroe Davis and Hattie Davis by their conduct have elected to affirm the deeds. Under Mississippi law, after each plaintiff knew that a conveyance of one-half of the mineral rights under his property existed, or had knowledge of facts that would lead a reasonable man to discover the existence of such a conveyance, acceptance of a payment representing delay rentals on the other half of the mineral rights ratified the mineral deeds taken by Burrage. Koenig v. Calcote, Miss., 25 So.2d 763, and 12 C.J. S., Cancellation of Instruments, § 38, cited with approval in Koenig v. Calcote.

12 C.J.S., Cancellation of Instruments, § 38, pp. 996, 997, states:

"Where a party, with knowledge of facts entitling him to rescission of a contract or conveyance, afterward, without fraud or duress, ratifies the same, he has no claim to the relief of cancellation. An express ratification is not required in order thus to defeat his remedy; any acts of recognition of the contract as subsisting or any conduct inconsistent with an intention of avoiding it, have the effect of an election to affirm.

" * * * Nevertheless, notice of acts and circumstances which would put a man of ordinary prudence and intelligence on inquiry is, in the eye of the law, equivalent to knowledge of all the facts a reasonably diligent inquiry would disclose. * * *

"Generally speaking, any transactions with defendant relating to the subject matter of the contract and inconsistent with an intention to rescind will preclude a rescission. * * *"

The Mississippi Supreme Court in Koenig v. Calcote said [25 So.2d 767]:

" * * * Moreover, when testifying at the trial, Mr. Calcote was asked, 'How did you ascertain that you had signed a mineral deed instead of a lease, and when did you find it out?' and he replied that he 'had heard it talked in the community when my check was split, that Mr. Koenig had executed a mineral deed on us and that he was going to draw half of our rental.' * * *

"Thereafter, the said grantors continued to receive annually only one half of the $23.85 provided for as rental under the oil and gas lease held by the Sun Oil Company. * * * Then too, the mineral deed was of record at the county courthouse in 1936 when Mr. Calcote 'heard it talked around the community when my check was split, that Mr. Koenig had executed a mineral deed on us', it having been shown that numerous other conveyances of like nature had been obtained by Mr. Koenig in the community where the Calcotes reside. They thus had notice of facts and circumstances which in the eye of the law was equivalent to knowledge of all the facts a reasonably diligent inquiry would disclose."

The judgments appealed from are affirmed.

WALLER, Circuit Judge (specially concurring).

I concur in the foregoing opinion for the reasons stated, but also because of the

well-known principle of equity that "where one of two innocent persons must suffer a loss. it should fall upon him who by reasonable diligence and care could have protected himself, rather than upon him who could not." Savings Bank v. Creswell, 100 U.S. 630, 25 L.Ed. 713. The plaintiffs did not read nor have read to them the deeds to the mineral interests which they admittedly signed. This was a failure to exercise due care to protect themselves. Koenig v. Calcote, Miss., 25 So.2d 763, 967; McCubbins v. Morgan, Miss., 23 So.2d 926.

Because of their negligent failure to read or to have the deeds read to them, plaintiffs not only failed to exercise due care to protect themselves but made it possible for innocent third parties to become bona fide purchasers for value of the papers which they thus innocently, but negligently, helped to set in motion.