GRIFFIN, Justice,
for the Court:
This is a suit against the Federal Deposit Insurance Corporation (hereinafter referred to as the FDIC) by Southern Seed Service of Greenville, Inc. and Charles H. Smith, president of the corporation, seeking cancellation of a mortgage entered into by Smith with Citizens Bank in Tillar, Arkansas on December 28, 1979. FDIC has counterclaimed for judicial foreclosure of its lien under the mortgage, which it claims is in default.
FDIC is the appointed receiver of Citizens Bank pursuant to 12 U.S.C. §§ 191 and 1821(c), the bank having been declared insolvent by the Governor of Arkansas on June 23, 1982, and placed into receivership by the Comptroller of the Currency. The note, secured by some land located in Greenville, Mississippi, evidences an indebtedness in the original principal amount of $100,000, and bears an interest rate of fifteen percent (15%) per annum, with a final maturity date of December 15, 1980. This date, however, was extended twice: the first time by Charles H. Smith, and the second (and disputed) time by one Louis H. *473 (Pete) Smith, son of Charles H. Smith and secretary of Southern Seed Service. There is no evidence that this latter extension was ever acknowledged by Southern Seed Service or its president, Charles H. Smith.
The validity of the note itself is not at issue: Smith does, however, seek cancellation of the instrument due to the alleged wrongful removal of over $100,000 from his corporate account in Citizens Bank in weeks prior to its collapse. Smith alleges that the account was improperly debited by bank officers therein, who are related to him as well. The debits were authorized in a manner which utilized the authority of one Emmett Smith, vice president of the bank and a cousin of the appellant. This debiting took place apparently at the direction of W.R. (Bill) Smith, Jr., Chairman of the Board of the bank and a cousin of Charles H. Smith.
Appellant Smith claims never to have given, either explicitly or by implication, any discretionary authority over the Southern Seed checking account to anyone other than himself in such matters. However, there is considerable evidence to the contrary. It appears that the Southern Seed account, his own checking account, and one belonging to Pete Smith all used corporate funds interchangeably. Too, several of the parties to this action have been issued check cashing cards allowing unlimited access to the Southern Seed checking account. Finally, the proof established shows that with reference to the alleged wrongful debits, at least three checks signed in blank by Charles H. Smith were delivered to the bank and subsequently were filled out by bank officers and negotiated without objection to cover the debited amounts.
None of the original indebtedness due under the note has been paid, and up to the time of the first agreement on December 26, 1980, extending the date to December 15, 1981, accrued interest in the amount of $14,000 was handled in a manner, according to appellant, unknown to him.
The second extension agreement executed by Pete Smith on December 31,1981, allegedly came pursuant to some pressure placed upon him by Emmett Smith and Bill Smith, Jr., arising from approximately $80,-000 in personal indebtedness owed by Pete Smith to the bank. It seems in return for his signature on the instrument refinancing his personal obligations and those of the Southern Seed note, the bank officers promised their cousin that foreclosure and repossession efforts on his property would not occur.
The second extension was made known to appellant, but he claims to have been unconcerned with the agreement as he was preoccupied at the time with a serious illness in the family, as well as the fact that he had never considered the note as his own. Smith alleges he entered into the agreement with the understanding only that it would serve as a temporary substitute for Bill Smith, Jr.’s proposed capital contribution at a later date. This advanced money therein was for certain improvements made to Southern Seed, which would be followed eventually by the sale of the corporation to a group of interested parties. This later transaction did not occur, nor was the proposed capital contribution ever made by Bill Smith, Jr.
Despite appellant’s allegations, there is no evidence that the mortgage and note of 1979 were made by Charles H. Smith for the accommodation of Bill Smith, Jr. Nor is there any testimony that the mortgage and note, in default at the time of the bank’s insolvency, are anything other than valid, proper and binding instruments of Southern Seed Service and Charles H. Smith.
This is an unfortunate situation. Apparently appellant relied upon a relative and friend to make good his promise to pay the principal and interest on a note appellant knowingly participated in when he ratified the agreement between Southern Seed and Citizens Bank. However, in our review of the case, we are bound to follow law as applied to the chancellor’s factual determination therein, appellant’s present dilemma notwithstanding. We note as well that the record indicates Smith, et al. did benefit from the $100,000 loan, as various improve *474 ments utilizing this money were made to the Southern Seed facility.
As error, appellant brings to our attention the equitable doctrine of “clean hands,” which he alleges should not have been applied to his cause of action (resulting in dismissal of the case). Appellant claims the chancellor should not have found the mortgage and note proceeds used to improve the Southern Seed facility constitute deception, thereby precluding him from gaining relief under said doctrine.
We agree with the chancellor. We find that the record amply supports the factual determination he made that appellants had, by their conduct, ratified the actions of the bank officers in debiting the Southern Seed Service account, and that because of such conduct appellants cannot now claim their funds were misused. We take into consideration the statement of the chancellor, who concluded that:
Citizens Bank may be liable for the fraudulent acts of misrepresentations of its officers which cause injury to a depositor. Its liability is limited to acts and representations made within the scope of the officer’s actual or apparent authority relief upon to the detriment of the plaintiff. First American National Bank Vs. Mitchell, 359 S.2d 1376 (Miss.1978). Although a mortgagor and mortgagee relationship normally establishes a fiduciary relationship, the plaintiffs in the instant cause participated on at least two occasions in actions designed to circumvent established Federal Banking Law. In addition, there is a persuasive evidence before the Court that officials of the Citizens Bank possessed checks executed in blank by officers of plaintiff corporation which admitted authority on at least one occasion to negotiate said check. The Court concludes that under normal circumstances the act of a bank officer in debiting without permission a customer’s account would unquestionably result in liability to the banking corporation. Emmett Neal Smith testified that he telephoned Lewis H. (Pete) Smith and discussed the debiting of the account with him after June 14, 1982, the same day at least three of the checks signed and delivered in blank by plaintiffs to the bank were actually filled out by a bank officer. The three checks cleared. No protest has been made by any party to date. (Deposition of Emmett Neal Smith at Pages 105-133). The Court concludes that the plaintiffs have ratified the practice of Citizens Bank by their conduct, by their delivery of blank checks to the bank to cover debit memoranda, and further because no fiduciary relationship existed between the depositor and Citizens Bank. The Court therefore concludes that the plaintiffs are estopped by their conduct to maintain the subject action. Koenig Vs. Calcote, 199 Miss. 435, 25 So.2d 763 (1946).
Because our own review of the record indicates that it contains substantial, credible evidence supporting the chancellor’s finding of fact herein, we will not reverse on appeal. Johnson v. Black, 469 So.2d 88 (Miss.1985).
Affirmed.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.