CRABB et al. v. WILKINSON et al.

(Division B.   Oct. 27, 1947.   Suggestion of Error Overruled Nov. 10, 1947.)

[32 So. (2d) 356.   No. 36570.]

Price, Phillips & Alford, of McComb, for appellants.

Roach & Jones, of McComb, for appellees.

Argued orally by **Percy Alford**, for appellants, and by **Bert Jones**, for appellees.

**Griffith, P. J.**, delivered the opinion of the court.

On December 11, 1937 appellees executed and delivered to appellants two written instruments, duly acknowledge-ed, by one of which appellees granted to appellants an oil and gas lease on all the lands involved herein and by the other they conveyed to appellants ''an undivided one half interest in and to all the oil, gas, and other minerals in and under'' said lands. Both these instruments were duly recorded on the public records of the county on December 18, 1937. They were on standard forms then and now in common use in this state, and legitimately so, as mentioned in McCubbins v. Morgan et al., 199 Miss. 153, 23 So. (2d) 926.

On November 4, 1944 appellees filed their bill to cancel the mineral deed, alleging that they had executed it on the fraudulent pretense and statement by appellants' agent that it was merely a copy of the oil and gas lease, and that the copy was desired for appellants' files. And on the hearing appellees introduced testimony to support that allegation, denied by the testimony introduced by appellants.

We do not pursue the stated issue for the following reason, based on undisputed facts:

The mineral lease was what is known as a delay rental contract by which to keep it alive annual rentals were required to be paid. The stipulated annual rental was $32, and the Mechanics State Bank at McComb, Miss., designated as the depository for the handling of the annual remittances of the rentals. When the time for the annual rental due on or before December 11, 1938 had arrived, appellees called at the designated bank and there found that the remittance was for $16, whereupon appel-lees requested the bank to ascertain from appellants why the remittance was not for the $32 called for in the lease, in response to which appellants sent to the bank photostic copies of both the instruments above mentioned, an examination of which would explain and did explain that

under the mineral deed appellants were entitled to one half the annual rent and appllees th other half or $16. The photostatic copies were shown by the bank to appeleels, and appellees thereupon accepted the $16 annual rental and also a like amount when remitted for the succeeding year. Appellants thereafter sent no further annual rentals, as a consequence of which the oil and gas lease expired by force of its own terms.

When the photostatic copy of the mineral deed was thus shown to appellees, the copy showing also that it had been duly recorded as aforesaid, appellees were thereby informed that the mineral deed was being asserted as a valid conveyance, and appellees were then and there called on to make an election whether they would deny its validity and refuse the tender made on the basis of its validity, or would accept the $16, thereby recognizing the right of appellants to retain the other $16 by virtue of the mineral deed. They took the latter course for both the years that the tender was so made, although their action in accepting the $16 on the first rental renewal was all that was necessary to be shown for the reason that an election to affirm once made is there after irrevocable.

Thus the facts bring the case within the principles announced in Koenig v. Calcote, 199 Miss. 435, 25 So. (2d) 763. There, as here, the complainants alleged that they had not validly executed a mineral deed to one half the minerals, but the facts further were that when the first annual renewal rental became due and it was found that only one half the amount expected was remitted, the complainants inquired of the opposite parties the reason therefor and in response to that inquiry the complainants were advised by letter that the opposite parties held a mineral deed from the complainants to one half the minerals. The complainants being so informed accepted the tender of the renewal rental which was one half the amount which, except for the mineral deed, would have been due under the lease; and the court held that having

thus recognized the mineral deed as a subsisting contract, they thereby affirmed it.

The Court quoted from 12 C. J. S., Cancellation of Instruments, Section 38, and thereby adopted, as follows: ''Where a party, with knowledge of facts entitling him to rescission of a contract or conveyance, afterward, with- out fraud or duress, ratifies the same, he has no claim to the relief of cancellation. An express ratification is not required in order thus to defeat his remedy; any acts of recognition of the contract as subsisting or any conduct inconsistent with an intention of avoiding it, have the effect of an election to affirm.''

And the rule was followed as being the law of this State by the Circuit Court of Appeals, Fifth Circuit, in Guice v. Burrage, 156 F. (2d) 304, 307, wherein the court held under the authority of Koenig v. Calcote, supra, that where the complaining party ''knew that a conveyance of one-half of the mineral rights under his property existed, . . . acceptance of a payment representing delay rentals on the other half of the mineral rights ratified the mineral deeds.''

The doctrine was in nowise qualified in Gulf Refining Co. v. Travis, 201 Miss. 336, 29 So. (2d) 100, Id., 30 (2d) 398, as appellees argue, for there the chancellor had found that the party sought to be bound as by an affirmance or ratification did not have full knowledge of all essential facts, and the controlling majority of the Court was of the opinion that this finding could not be held to be manifest- ly erroneous. Here appellees admit that at the time of their conduct in affirmance, they had before them in written form all the facts material to that affirmance.

Appellees urge, however, that by their stated conduct they did not intend to affirm the mineral deed here sought to be cancelled, but intended to affirm only the lease and that they had no thought of giving recognition to the mineral deed. They so testified. No authority is cited by appellees in support of that argument. We call attention to the closing sentence of the quotation taken

from Koenig v. Calcote [199 Miss. 435, 25 So. (2d) 767] as respects ''conduct inconsistent with an intention of avoiding'' the contract. Conduct is looked to in such cases to find the intention, otherwise the rule as stated would become, in practical effect, no rule at all.

All persons are presumed to know the legal effect of their acts. 31 C. J. S., Evidence, Section 132, and the cases cited under note 96. Although as said in Plattsmouth v. Murphy, 74 Neb. 749, 753, 105 N. W. 293, 295, the rule may work ''a hardship in individual instances, . . . but is of little importance, when compared with the evils which would result from measuring the rights of a litigant not by the law as it is, but by the law as he understood it to be.'' The legal relations of men would be set at sea if a party, who deliberately and with full knowledge of the facts does an act to which the law attaches a definite legal effect, could sterilize that effect by a declaration afterwards made that he intended no such effect.

Reversed, and decree here for appllants.

On Suggestion of Error.

**Alexander, J.,** delivered the opinion of the court on suggestion of error.

The suggestion of error raises the point that subsequent to the final decree under the original bill, part of the property involved was sold by J. H. Wilkinson and Wife to certain grantees. Code 1942, Section 1392. It is now for the first time argued that our judgment should not encompass these grantees, at least one of whom purchased part of the lands after such decree and prior to the petition of defendants for rehearing.

The contention was not assigned, presented or argued upon the appeal. H. E. Wilkinson and Wife, grantees in one of such deeds, were parties to the suit upon appeal. It was said in State ex rel. Suddoth v. Tann, 172 Miss.

162, 158 So. 177, 159 So. 539, 540: "It is a rule of practice in nearly all appellate tribunals, and certainly so in this court, that a point not argued at all is to be taken as waived." (Citing authorities.) We must therefore forbear now to consider the contention.

Under the circumstances, we need not examine the effect, upon the issue of good faith, of the lis pendens notice filed prior to both deeds.

Overruled.