CHRISMOND v. CHRISMOND.

Division A. May 21, 1951.

No. 37948 (52 So. (2d) 624)

J. W. Miller, and Barnett, Jones & Montgomery, for appellant.

Butler, Snow & O'Mara, and John B. Gee, for appellee.

**Kyle, J.**

This is an appeal by Lon Chrismond, defendant in the court below, from a decree of the chancery court of Sharkey County in favor of Mrs. Mable Chrismond, complainant, annulling the bonds of matrimony created by two purported marriages of the complainant and the defendant, and granting to the complainant an absolute divorce from the defendant, and awarding to the complainant certain real property as her equitable share of the property accumulated by the joint efforts of the parties during their relationship before and after the purported marriages.

The complainant in her bill of complaint alleged that the complainant and the defendant were married in Lake Village, Arkansas, on November 15, 1942 (the proof shows August 27, 1943 or 1945), and thereafter lived together as husband and wife in Sharkey County, Mississippi, until approximately 30 days before the filing of the bill of complaint; that through their joint efforts and savings they accumulated a substantial amount of property, which consisted of farm lands and other real property situated in Sharkey County; that the defendant a short time before their separation began to mistreat the complainant, and to curse and use abusive language toward the complainant, and threatened to strike her, and that the defendant finally stated to the complainant that he had a living wife undivorced; and that the complainant thereafter left the defendant and since that time had lived apart from him. The complainant in her bill of com-

plaint asked that the bonds of matrimony be annulled and that she be granted a divorce from the defendant, and the complainant also asked for a partition of the property that had been accumulated through their joint efforts during the time they had lived together, or for alimony which should constitute a lien upon the property.

The defendant in his answer denied that he and the complainant were married according to law in Lake Village, Arkansas, as alleged in the bill of complaint. The defendant alleged in his answer that he had met the complainant sometime during the year 1939; that the complainant at that time was married to one John Lowery and was the mother of a child named Faye Lowery; that John Lowery had separated from the complainant, and that the complainant requested employment by the defendant as housekeeper and that he had employed her as such; that she moved into his house under that arrangement and worked for him, keeping house for him and at times driving his automobile while he was on the road engaged in his business of selling cakes, cookies and other confections; that the defendant at that time was married to Clara Bell Simpson Chrismond, who was living apart from the defendant, in Bogalusa, Louisiana. The defendant further stated that it was understood by the complainant and the defendant at that time that both paries were married and that neither of them had obtained a divorce; that sometime during the year 1945 the complainant obtained a 90-day divorce from her husband, John Lowery, in the State of Arkansas, and that soon thereafter the complainant and the defendant obtained a marriage license and were married at Lake Village, Arkansas; that the complainant's husband, John Lowery, obtained a divorce from the complainant in Leake County, Mississippi, in 1948, and that the complainant and defendant thereafter obtained another marriage license in Sunflower County and were remarried in that county. The defendant admitted in his answer

that at that time he had not been divorced from his former wife who lived in Bogalusa, Louisiana.

The defendant denied that the property that he owned had been accumulated as a result of the joint efforts of the complainant and the defendant, and he denied the charge of cruel and inhuman treatment .contained in the bill of complaint; and the defendant asked that the bill of complaint be dismissed.

The proof showed that the complainant had been married to John Lowery at Carthage in Leake County in 1928, and that she and her husband had lived together in Leake County until about 1935 when they moved to Sharkey County; and that they were living in Sharkey County when they separated a year or two later; that about 1941 the complainant moved into the home of the defendant in Sharkey County where she continued to live until the date of their separation in 1949; that sometime after moving into the home of the defendant the complainant obtained a 90-day divorce in the City of Little Rock, Arkansas, and that the complainant and the defendant were married at Lake Village, Arkansas, on August 27, 1943 or 1945. The proof showed that the complainant's former husband, John Lowery, obtained a divorce from the complainant in 1948, and that the complainant and the defendant were remarried in Sunflower County, Mississippi, on February 14, 1948. The defendant during all of this time had a wife living in Bogalusa, Louisiana, from whom he had not been divorced.

The proof showed that the complainant during the eight or nine years that she and the defendant lived together cooked the meals for the family and attended to all of her household duties and ministered to the personal needs of the defendant, who was a cripple and unable to walk except with the aid of crutches. The defendant was engaged in the business of a transient vendor of cakes, candies, cookies and other confections, which he sold on consignments along the routes which he travelled over the county. The two worked together

much of the time; and succeeded in making the business a profitable business. The complainant testified that they wanted to build up the business and to accumulate property, that they worked seven days in each week, and that it was through their joint efforts that they succeeded in accumulating the property which the defendant owned at the time of the filing of the bill of complaint. The defendant admitted that the complainant helped him carry on his peddling business during much of the time that they lived together. The proof showed that at the time of the filing of the bill of complaint the defendant was the owner of farm land and other real property of the value of approximately $40,000, and that the property was encumbered by mortgage deeds of trust in the amount of approximately $12,500.

The chancellor found that the property owned by the defendant at the time of the filing of the bill of complaint, with the exception of the Onward Plantation, had been acquired through the joint efforts of the complainant and the defendant during the time they lived together. The chancellor found that the marriage of the complainant and the defendant in Arkansas in 1945 and the marriage in Mississippi in 1948 were both void marriages, because the defendant at the time of each of said marriages had not been divorced from his former wife who was living in Bogalusa, Louisiana. The chancellor stated that the evidence failed to show that the defendant ever at any time advised the complainant that he had not been divorced from his former wife; and the chancellor stated that whether the complainant's Arkansas divorce was valid or invalid (and he did not deem it necessary to pass upon that question), the complainant had been led to believe that it was valid and that she had a right to marry after obtaining the Arkansas divorce. The chancellor found that the complainant at the time of her second marriage to the defendant had not been advised by the defendant that he had never been divorced from his first wife; and the chancellor

found that the complainant entered into the two marriages with the defendant in good faith.

The chancellor held that the parties had never been lawfully married, and that under the decisions of this Court alimony could not be granted to the complainant. The chancellor held, however, that the defendant's ceremonial marriages to the complainant in Arkansas and in Mississippi raised the presumption that the defendant had been divorced from his former wife, and that the defendant should not be permitted to come into a court of equity and set up his former marriage to defeat a recovery by the complainant in a suit of this kind, after he had entered into the two marriages with the complainant knowing that he had not been divorced from his former wife.

The chancellor entered a decree annulling the bonds of matrimony created by the marriages of the complainant and the defendant to each other and granting to the complainant an absolute divorce; and the chancellor in the decree ordered that the homestead property, situated in the Town of Rolling Fork and occupied by the parties as a homestead, be awarded to the complainant, free and clear of all indebtedness, and that the defendant execute and deliver to the complainant within 30 days from the date of the decree a proper deed of conveyance of the homestead property and discharge all liens against the property so that the complainant would be invested with a valid unencumbered title to the property.

The appellant in his assignment of errors and in his brief contends (1) that the court erred in granting the divorce for the reason that no lawful marriage existed between the parties and the court had no authority to grant the divorce; (2) that the court erred in granting the divorce on the grounds of habitual cruel and inhuman treatment, because the proof did not warrant a divorce on the grounds alleged; and (3) that the court erred in ordering the appellant to convey to the appellee the

homestead property. The appellant also contends that, in view of the fact that the marriages between the parties were void, the chancellor had no authority to allow alimony to the putative wife or to require the conveyance of property to her in settlement of her claim for alimony; and that, in view of the fact that the complainant's bill was in form a bill for divorce and alimony, the chancellor had no authority to treat the same as a bill for an annulment of the marriages and a division of property.

The appellee, in answer to the contentions made by the appellant, says that although the suit was instituted as a divorce proceeding the pleadings were so drawn and the issues so shaped by the pleadings and the proof that it was within the power of the court to grant relief, whether in the form of a decree of divorce or in the form of a decree of annulment, and to provide for an equitable division of the property accumulated by the joint efforts of the parties during their marriage relationship.

In discussing these questions we shall deal first with the form of the pleadings and the point made by the appellant that the jurisdiction of the court was limited by the pleadings to a suit for divorce from the bonds of matrimony created by a valid marriage.

Section 2735, Code of 1942, provides that divorces from the bonds of matrimony may be decreed to the injured party for any one or more of the twelve causes mentioned. Among those causes are (7th) habitual cruel and inhuman treatment, and (9th) marriage to some other person at the time of the pretended marriage between the parties. The bill of complaint filed in this cause was a bill for divorce. The complainant alleged in her bill habitual cruel and inhuman treatment as grounds for divorce. The complainant also alleged in her bill as a cause of the separation that immediately before the separation the defendant stated to her that he had a living wife from whom he had not been divorced. The complainant in her prayer for relief asked that the marriage

be annulled and that she be granted a decree of divorce and a division of the property. The defendant in his answer, treating the bill as a bill to dissolve a valid marriage, denied that he had ever been legally married to the complainant for the reason that he had never been divorced from his former wife.

It would probably have been the better practice for the complainant, after the filing of the defendant's answer, to have amended her bill for the purpose of adopting in the alternative the allegations of the defendant's answer showing the invalidity of the marriage; but we think that without such amendment the issues to be determined by the court were presented by the pleadings with sufficient clarity to enable the court to proceed with the trial, and the court under the special prayer and the general prayer contained in the bill had jurisdiction to grant any relief consistent with the bill and within its scope which might be justified by the facts proved upon the hearing. Griffith's Mississippi Chancery Practice, (2d) Ed., 1950, par. 186 and par. 187, pp. 173, 174.

The evidence was sufficient to support the findings of the chancellor on the issue of habitual cruel and inhuman treatment and on the other issues presented by the pleadings; and the defendant admitted that at the time of his marriage to the complainant he had a wife living from whom he had not been divorced.

The most difficult question that we have had to deal with on this appeal is the question as to the right of the complainant to an equitable division of the property acquired by the defendant as the result of the joint efforts of the parties during their marriage relationship.

This Court has held that ██ ██ a valid marriage must exist before the court can allow alimony to the wife. Reed v. Reed, 85 Miss. 126, 37 So. 642; Aldridge v. Aldridge, 116 Miss. 385, 77 So. 150. This Court has also held that ██ ██ where alimony is awarded to the wife and is made payable in a lump sum, it must be

paid in money, and that the court cannot award a part of the husband's property to the wife in payment of alimony. McCraney v. McCraney, 208 Miss. 105, 43 So. (2d) 872. But those cases have little bearing upon the question that we have presented on this appeal. The record in this case shows that there was no valid marriage between the parties.

There are but few reported decisions involving questions of the property rights of a putative wife, where for one reason or another the supposed marriage turns out to be void, but in a majority of the cases that have come to our attention relief of some character has been granted.

We have here presented the question whether a woman who has entered into an arrangement with a man whereby she has lived in his home, cared for him and kept house for him, worked and assisted him in the accumulation of property, and has subsequently married him in good faith, when in fact he was incapable of contracting a legal marriage with her because of his prior marriage to another woman, and who thereafter has continued to work and assist him in his business, is entitled to an equitable division of the property accumulated by their joint efforts during the time they were living together.

We think that the equity powers of the court are sufficient to protect the rights of the putative wife, where the supposed marriage which she entered into in good faith turns out to be void, and that she is entitled to an equitable division of the property accumulated by their joint efforts during the time they lived together as man and wife.

In 35 Am. Jur., p. 216, Marriage, Sec. 53, the rule applicable to cases of this kind is stated as follows: "It is a general rule that when a woman in good faith enters into a marriage with a man who is incapable of contracting marriage because of some impediment, or when both of the parties enter into a void marriage in good faith, the woman is entitled to a division of the property accumulated by the joint efforts of the parties during

their relationship, and on an annulment of the marriage the courts usually assume jurisdiction to make an equitable division and settlement of the property acquired during the cohabitation of the parties, either by way of a division of the property or an allowance to the wife in the nature of alimony, at least where she has lived as the wife of the other party in good faith.''

In the case of Werner v. Werner, 59 Kan. 359, 53 P. 127, 41 L. R. A. 349 which is cited as one of the leading cases on the point that we now have under consideration, the court said: ''Emil Werner complains of the ruling of the court awarding Rosa a share of the property, contending, first, that she was never, in fact, his wife, and that alimony is never awarded to a woman who is not a wife. It is true, as the plaintiff in error contends, that the marriage between the parties was absolutely void from the beginning. Although living together as husband and wife, they were not, in fact, married, and hence no allowance could be made as alimony. The rule is that permanent alimony can only be allowed where the relation of husband and wife has existed; but this rule does not preclude an equitable division of the property where there is a judicial separation of the parties on account of the invalidity of the marriage contract. Fuller v. Fuller, 33 Kan. 582, 7 P. 241. Strictly speaking, this action as it was tried was not a divorce proceeding, but it was rather one to annul a void marriage. Although instituted under the statutes to obtain a divorce, the pleadings were so drawn, and the issues so shaped, that it was within the power of the court to grant relief independently of the statutes relating to divorce, and it rendered a decree of nullity, rather than a decree of divorce. . . . Even in cases where the marriage is valid, and a divorce is refused for any cause, the court may adjudge an equitable division and disposition of the property of the parties. Code Civ. Proc., Section 643. But, independently of the statute of divorce, we think the court had authority to decree not only an annulment

of the marriage, but also the division of the property which had been jointly accumulated by the parties. It was an equitable proceeding, and within its equity power the district court had full jurisdiction to give adequate relief to the parties."

In the case of Krauter v. Krauter, 79 Okl. 30, 190 P. 1088, the court held that in an action where a marriage is found and decreed to be incestuous and void because the parties were first cousins, the woman having entered into the marriage contract in good faith, the court, while it cannot grant alimony as such, has authority to make an equitable division of the property jointly accumulated by the parties while they lived together as husband and wife.

No decision of this Court bearing directly upon the point that we now have under consideration has been called to our attention. But in his Treatise on Divorce and Separation in Mississippi, Judge Amis has said that since a nullity suit is an equitable proceeding all property rights and equities growing out of or connected with the supposed marriage relation between the parties may be adjusted by the court, whether the marriage was void or voidable; and if the parties have by their joint efforts acquired property during the supposed marriage an equitable division of it may be ordered, no matter whether the title thereto be in one or both jointly.

In view of the principles set forth in this opinion and the authorities cited in support of those principles, we think that the chancellor was justified in granting to the appellee the decree of divorce and annulment of the marriage between the appellee and the appellant, and in awarding to the appellee an equitable share of the property accumulated by the joint efforts of the parties while they lived together as husband and wife, and that the decree of the lower court should be affirmed.

Affirmed.