657 So.2d 1112 (1995)
Sidney MALONE
v.
Patt ODOM.
No. 91-CA-01273-SCT.
Supreme Court of Mississippi.
June 29, 1995.
*1113 Michael J. McElhaney, Colingo Williams Heidelberg Steinberger & McElhaney, Pascagoula, Carol Seaman Noblitt, Colingo Williams Firm, Pascagoula, for appellant.
William T. Reed, Oswald and Reed, Pascagoula, for appellee.
Before DAN M. LEE, P.J., and McRAE and SMITH, JJ.
DAN M. LEE, Presiding Justice, for the Court:
This appeal arises from the November 22, 1991, judgment of the Jackson County Chancery Court granting Patt Odom (hereinafter "Patt") an equitable lien on a heavily mortgaged house owned by Sidney Malone (hereinafter "Sidney") in which she had resided since 1983. Subsequently, upon Patt's Motion For Clarification, the chancellor modified his initial Ruling And Judgment Of The Court and converted the equitable lien against the residence to a judgment against Sidney, personally, in the amount of $55,000.00. In addition to the judgment against Sidney, the chancellor ordered that Sidney pay Patt $8,210.95 for attorney fees. Sidney, aggrieved by the chancellor's decision, assigns the following as error:
I. THE TRIAL COURT COMMITTED MANIFEST ERROR IN FINDING THAT A RESULTING TRUST AROSE IN FAVOR OF PATT ODOM ENTITLING HER TO AN EQUITABLE LIEN ON THE QUEEN ELIZABETH STREET PROPERTY AND/OR A JUDGMENT AGAINST SIDNEY MALONE.
II. THE TRIAL COURT COMMITTED MANIFEST ERROR IN FAILING TO IMPLEMENT THE STATUTE OF FRAUDS AS A BAR TO PATT ODOM'S CAUSE OF ACTION.
III. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN AWARDING PATT ODOM SPECIAL DAMAGES NOT SPECIFICALLY PLED UNDER THE MISSISSIPPI RULES OF CIVIL PROCEDURE, RULE 9(g).
IV. THE TRIAL COURT COMMITTED MANIFEST ERROR IN AWARDING PATT ODOM ATTORNEY FEES.

FACTS
In 1972, Patt and Sidney commenced an illicit affair that is at the heart of today's litigation. Prior to their affair, Patt and Sidney had known each other at least casually since 1963. In fact, Sidney was the best man in Patt's first wedding. After Patt divorced her first husband, she moved to Ocean Springs where she had occasion to renew her acquaintance with Sidney. At first, their relationship was platonic. Later, Patt and Sidney became lovers. Unfortunately, this affair was complicated by the fact that Sidney was married and Patt knew Sidney was married.
In the early days of the affair, Sidney would drive from his home in Hattiesburg to Patt's home in Ocean Springs and spend the night with Patt. After Patt moved into Sidney's duplex on Dixie Avenue, Sidney would visit Patt and stay in the half of the duplex not occupied by her or her two sons. Throughout their affair, Sidney and Patt would make out-of-town trips together, and Sidney frequently bought Patt gifts and on occasion he would give her money. At some point during the relationship Patt moved to Hattiesburg and stayed for one year. Ultimately however, she moved back to Ocean Springs.
The record indicates that Patt moved into Sidney's duplex on Dixie Avenue sometime in 1975 and that Patt did not pay anything towards the construction or purchase of the duplex. Patt and her sons lived in one side of the duplex and Sidney stayed in the other side during his liaisons with Patt. At the hearing, the chancellor found that Patt had landscaped the duplex property and had bought a chandelier for the duplex. After Sidney built the duplex on Dixie Avenue, Patt sold her home in Ocean Springs.[1]
*1114 Initially the Dixie Avenue duplex was titled in Sidney's name. On or about November 21, 1978, Sidney deeded the Dixie Avenue property to Patt. From this point on, the record is somewhat sketchy, but it appears that at some point in 1982, Patt deeded the Dixie Avenue property back to Sidney so that he could sell the property. Not surprisingly, from this point on Patt's and Sidney's stories diverge. The record indicates that at some point in 1981, Sidney's wife learned of his affair with Patt. Mrs. Malone gave Sidney an ultimatum; end the affair with Patt or else she would divorce him. Sidney did not end the affair, and in January of 1982, Mrs. Malone was granted a divorce.
Patt claims that she deeded the Dixie Avenue property back to Sidney so that he could sell the duplex and build her another house. Patt testified that she could not afford the upkeep on the duplex, she made no payments on it and she wanted a smaller home; thus, she agreed to allow Sidney to sell the Dixie Avenue duplex.
Sidney's story as to the Dixie Avenue duplex is quite different than Patt's. Sidney admitted that he had once deeded the duplex to Patt. However, Sidney testified that Patt deeded the duplex back to him at or about the time of his divorce from his first wife. Sidney testified that the divorce from his wife was costly, and that Patt deeded the duplex back to him so that he could sell the duplex to help pay the cash settlement he had to pay his wife as a result of their divorce. After Patt deeded the Dixie Avenue duplex back to Sidney, she moved into a home that Sidney owned in Gautier.
In between Patt deeding the Dixie Avenue duplex back to Sidney, and Sidney building the Queen Elizabeth house, Sidney asked Patt to marry him and move to Hattiesburg. Sidney bought a house in Lamar County for the couple to live in and raise their children (Patt had two boys by her first marriage, as did Sidney). Patt refused to marry Sidney and told him that she was going back to the coast. Patt left Hattiesburg and moved into a house Sidney owned in Gautier. However, Patt was not happy living in Sidney's house in Gautier and demanded that he build her a home in Ocean Springs. Sidney told Patt that he could not afford to build her a house in Ocean Springs. Sidney testified that Patt, when apprised of this fact, agreed to pay rent if he would build her a house in Ocean Springs.
On June 28, 1983, Sidney purchased the Queen Elizabeth property in Ocean Springs and began work on building a house on the property. The house was completed in 1983 and Patt moved into it in October of the same year. The following month Patt received a letter from Sidney that contained a holographic codicil to his will. In the codicil Sidney made it clear to his two sons that should he die before Patt, she should be deeded the land and house at 3703 Queen Elizabeth Drive in Ocean Springs. There exists no other written evidence in the record to indicate any type of agreement between Sidney and Patt as to the ownership of the disputed property.
The couple's affair appeared to be an on-again, off-again relationship until January of 1990. In January of 1990, after Sidney's affair with Patt ended and after Sidney's financial fortunes suffered a serious setback, Sidney offered to quitclaim the Queen Elizabeth Drive property to Patt if she would assume the mortgage[2]. Patt stated that she could not afford to pay the $800.00 per month in house payments and refused Sidney's offer[3]. Thereafter, Patt filed this action against Sidney seeking an equitable lien on the Queen Elizabeth Drive house and lot.

*1115 DISCUSSION

We find merit in the first assignment of error and find it to be dispositive of the case sub judice. Accordingly, we will not address assignments of error two through four.

I. THE TRIAL COURT COMMITTED MANIFEST ERROR IN FINDING THAT A RESULTING TRUST AROSE IN FAVOR OF PATT ODOM ENTITLING HER TO AN EQUITABLE LIEN ON THE QUEEN ELIZABETH STREET PROPERTY AND/OR A JUDGMENT AGAINST SIDNEY MALONE.
Our review in the case at bar is governed by familiar rules. This Court will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was applied. Herring Gas Co., Inc. v. Whiddon, 616 So.2d 892 (Miss. 1993), citing Bowers Window and Door Co., Inc. v. Dearman, 549 So.2d 1309, 1313 (Miss. 1989).
After a trial in which several witnesses were called by each side, the chancellor rendered his Ruling And Judgment Of The Court on September 6, 1991. This Ruling states in part:
....
The Court is of the opinion, after reviewing the following authorities, i.e.: Pickens vs. Pickens, Neyland vs. Neyland, Taylor vs. Taylor, Chapman vs. Chapman, Chrismond vs. Chrismond, Dobbs vs. Bowling, and others relative to the issues of this case, that the controlling principals [sic] of several of these cases clearly supports the theory that Mrs. Odom should be dealt with equitably for the time, money and effort that she has given Mr. Malone personally and what she has done regarding his properties and assisting him in his businesses. The Case Law has clearly established in the Neyland decision that the Statute of Frauds has no application to resulting trust [sic]. The Court is of the opinion that the Statute of Limitations would likewise fail to apply under these circumstances. The Court is of the opinion further, that the foregoing facts as stated and as offered in this Record in its entirety mandate that Pat [sic] Odom should have an equitable award for her efforts.
Therefore, taking into consideration the totality of the circumstances, Mrs. Odom is hereby granted and awarded an equitable Lien [sic] in and to the property occupied by her on Queen Drive [sic] in the city of Ocean Springs, Mississippi, the exact legal description in the Land Records of this County are incorporated herein by reference and shall be set out in detail in the formal and final Order. That said properties shall herein be incumbered in the sum of $65,000.00 for which Judgment shall be entered in addition to a Judgment of Contempt in the amount of the monthly sums not paid as previously Ordered by this Court and ignored by the Defendant. Mr. Malone shall have thirty (30) days to purge himself of the Contempt by paying the arrearage and unless he shall purge himself of the arrearage by making appropriate payments or arrangement for same, then he shall be brought before this Court to show cause why he should not be placed in jail until the arrearage on the monthly payments are brought current or reimbursed. (emphasis added).
Subsequent to the chancellor's ruling, Patt filed her Motion For Clarification. With this motion Patt sought: (1) the lower court's clarification of its September 6, 1991, ruling; (2) that the equitable lien against the Queen Elizabeth Drive property be converted to a personal judgment against Sidney; (3) that she be awarded attorney's fees; and (4) that she be given general relief. In response to Patt's motion, the chancellor issued his Order dated November 22, 1991, which states in part:
The plaintiff be and she is hereby awarded a Judgment in the amount of $55,000.00 against the Defendant, Sidney Malone.
The Court finds that this is a proper case for attorney fees and that the vast amount of the attorney fees requested were a result of the actions of the Defendant *1116 and the Defendant's willful failure to comply in contempt of Orders of this Court.
Attorney fees are awarded in the amount of $8,210.95, to the Plaintiff.
From the cryptic passage in the lower court's September 6, 1991, Ruling And Judgment Of The Court, and subsequent Order dated November 22, 1991, we are forced to determine on what legal foundation the chancellor based his "equitable award." On appeal, Sidney argues that the dispositive issue is whether Patt Odom was entitled to an equitable lien and/or a judgment against Sidney Malone due to a resulting trust. In turn, Patt characterizes the chancellor's ruling as "pure equity appealing for do-right justice."
Notwithstanding these arguments, the chancellor's Ruling And Judgment Of The Court and accompanying Order is less than clear and "we [must] look to the substance of what has been provided, and not the label. We inquire not what the court [by] entering the prior judgment meant but what the judgment means, the language employed our primary and ultimate referent." Bowe v. Bowe, 557 So.2d 793, 795 (Miss. 1990). After thoroughly reviewing the record and the authorities relied upon by the chancellor and the chancellor's Ruling And Judgment Of The Court and Order, we find that the chancellor in fact awarded Patt an equitable division/lump sum payment in the amount of $55,000 which was approximately one-half of the value of the Queen Elizabeth Drive property.
The chancellor's ruling gives Patt a judgment based upon a theory of "equitable award," i.e., "The Court is of the opinion further, that the foregoing facts as stated and as offered in this Record in its entirety mandate that Pat [sic] Odom should have an equitable award for her efforts." To support this contention, the chancellor relies on Mississippi case law and certain facts from the record. Although the chancellor did not term this "equitable award" as an equitable division, two of the cases the chancellor relied on allowed for an equitable division of assets between parties that were not legally married. See Pickens v. Pickens, 490 So.2d 872 (Miss. 1986) and Chrismond v. Chrismond, 211 Miss. 746, 52 So.2d 624 (1951). See also Taylor v. Taylor, 317 So.2d 422 (Miss. 1975) (Court left undisturbed chancellor's award of $75.00 per month for thirty-six months for support of woman when couple had lived together for eighteen years as man and wife).
In the case at bar, the chancellor found that the controlling principles in Pickens v. Pickens, 490 So.2d 872 (Miss. 1986), Neyland v. Neyland, 482 So.2d 228 (Miss. 1986), Chapman v. Chapman, 473 So.2d 467 (Miss. 1985), Dobbs v. Bowling, 339 So.2d 985 (Miss. 1976), Taylor v. Taylor, 317 So.2d 422 (Miss. 1975) and Chrismond v. Chrismond, 211 Miss. 746, 52 So.2d 624 (1951), supported the "equitable award" to Patt "for the time, money and effort that she has given Mr. Malone personally and what she has done regarding his properties and assisting him in his businesses." All of the cases relied on by the chancellor in the case at bar are fact driven. Accordingly, we must apply the facts from the case at bar to the legal principles contained in the cases relied on by the chancellor to determine whether those cases dictate the result achieved in the court below.

Chancellor's Findings of Fact
First, the chancellor found that when Sidney began the affair with Patt, he represented to her that he was a single man, and that they would be married. The record contradicts this finding of fact. The parties' trial testimony clearly reflects that Patt knew Sidney was married from the outset of their affair. Likewise, the record indicates Sidney did ask Patt to marry him after his wife divorced him.
Furthermore, the chancellor states that "[a]fter the separation, Mr. Malone refused to legally marry Mrs. Odom ..." This statement is also incorrect. The record clearly shows that it was Patt who refused to marry Sidney, and not vice-versa.
"On appeal, this Court will not overturn the chancery court unless its findings were manifestly wrong." Daigle v. Daigle, 626 So.2d 140, 144 (Miss. 1993). On appellate review, we find that the chancellor's findings of fact in most crucial instances are not supported *1117 by the testimony. Accordingly, we find that the chancellor's findings of fact in his Ruling And Judgment Of The Court filed September 6, 1991, are manifestly wrong.

Law
The chancellor's September 6, 1991, ruling relies in a large part on Pickens v. Pickens, 490 So.2d 872 (Miss. 1986), Taylor v. Taylor, 317 So.2d 422 (Miss. 1975) and Chrismond v. Chrismond, 211 Miss. 746, 52 So.2d 624 (1951). The chancellor's reliance on these cases is misplaced as all of these cases are distinguishable from the facts of the case at bar.
In Pickens, the couple had been legally married and then divorced. After divorcing, the former husband and wife moved back into the same household and lived together for twenty years. However, the couple never legally remarried. During this twenty year period, the couple had two more children; both worked outside of the home, and contributed to the acquisition of certain assets that were acquired during the twenty years that they lived together without the benefit of being legally married. Pickens v. Pickens, 490 So.2d 872 (Miss. 1986). The couple decided once again that they did not want to live together, so a suit was filed in chancery court seeking an equitable division of the assets acquired during the twenty years they lived together. We upheld the chancellor's equitable division and likened the facts in Pickens to a situation in which a common law business partnership was being dissolved. Unlike Pickens, the facts of the case sub judice do not support an equitable division. Therefore, Pickens is not applicable to the case at bar.
The lower court also relied on Taylor v. Taylor, 317 So.2d 422 (Miss. 1975), and Chrismond v. Chrismond, 211 Miss. 746, 52 So.2d 624 (1951). Once again, however, these cases are distinguishable from the facts of the case at bar. In both Taylor and Chrismond the parties had gone through a wedding ceremony in good faith, only to find out many years later that they were not legally married. In both cases the couples had accumulated certain assets during the time they lived together as man and wife. In the case at bar, there was no wedding ceremony held in good faith. Nor did Sidney and Patt live together for many years as husband and wife under the mistaken belief that they were legally married. Therefore, we find that Taylor and Chrismond are not dispositive to the case sub judice.
It is this Court's opinion that our recent holding in Davis v. Davis, 643 So.2d 931 (Miss. 1994), governs the outcome of the case sub judice. In Davis, we rejected a woman's claim for an equitable division of her former boyfriend's property after the unmarried couple separated. Elvis Davis claimed that she was entitled to an equitable division of the more than five million dollars in assets that Travis Davis accumulated while the pair lived together. Davis, 643 So.2d at 934. Elvis Davis' claim that she was entitled to an equitable division of assets accumulated during the time she lived with Travis was based on many of the same cases relied on by the chancellor in the case at bar. See Pickens v. Pickens, 490 So.2d 872 (Miss. 1986); Taylor v. Taylor, 317 So.2d 422 (Miss. 1975); Chrismond v. Chrismond, 211 Miss. 746, 52 So.2d 624 (1951).
In Davis, this Court rejected Elvis' argument and distinguished the facts in the Davis case from Pickens, Taylor and Chrismond. We noted that the couple had never entered into a ceremonial marriage nor was Elvis an innocent partner to a void marriage. In Davis, as in this case, the woman refused to marry the man when asked. Id. at 936. Ultimately, we distinguished the cases that Elvis relied on and denied her request for an equitable division of the assets Travis accumulated during the time they lived together. In doing so, we recognized that the legislature has not extended the rights enjoyed by married people to those who have chosen merely to cohabit or carry on an affair as in the case sub judice. Patt had the opportunity to marry Sidney. Nonetheless, she chose not to. Accordingly, the facts of this case and our recent holding in Davis foreclose an equitable division for Patt.

CONCLUSION
The cases used by the chancellor to give Patt an equitable award/lump sum payment *1118 are fact specific. In the case sub judice, many of the chancellor's findings of fact were not supported by the record and were manifestly wrong. Daigle, 626 So.2d at 144. Under these erroneous facts, we cannot say that any of the cases relied on by the chancellor support an equitable award/lump sum payment in this case. Therefore, the facts of this case and our recent decision in Davis v. Davis, 643 So.2d 931 (Miss. 1994), dictate that we reverse and render the lower court's equitable award/lump sum payment.
REVERSED AND RENDERED.
HAWKINS, C.J., PRATHER, P.J., and BANKS, McRAE, ROBERTS and SMITH, JJ., concur.
SULLIVAN and PITTMAN, JJ., not participating.
NOTES
[1] Testimony revealed that Patt made about $1,000-$2,000 on the sale of her original home on Seymour Avenue. Patt testified that she placed that money in the bank and did not use any of that money to help purchase the Dixie Avenue duplex.
[2] Sidney was involved in various real estate ventures. It appears that many of his holdings were highly leveraged and as real estate values dropped in the late 1980's, Sidney's financial fortunes took a turn for the worse. In fact, from the record it appears that this case has been in and out of bankruptcy court.
[3] Sidney pledged the Queen Elizabeth Drive property along with thirty acres of commercial property in Hattiesburg and his house in Sumrall under a "dragnet clause" to secure other loans he had with Charter Savings Bank. At the time of the hearing, Malone's pay-off on the three properties was between $919,000 to $929,000. Accordingly, the entire indebtedness had to be satisfied before Charter would release its claim to Sidney's Queen Elizabeth Drive property.