GRIFFIS, J.,
Dissenting:
¶ 25. Because I find error in the chancellor’s division of property in this case, I respectfully dissent from the majority’s holding. Accordingly, I would reverse the chancellor’s judgment and remand this case for further proceedings.
¶ 26. The chancellor ruled that Fannie Cotton’s bigamy rendered the marriage void and granted Eddie Cotton’s request for an annulment. Because Eddie and Fannie were never legally married, Fannie is not entitled to the equitable distribution of property incident to a divorce. In Ferguson v. Ferguson, 639 So.2d 921, 925 (Miss.1994), the supreme court stated:
This Court has “long recognized that, incident to a divorce, the chancery court has authority, where the equities so suggest, to order a fair division of property accumulated through the joint contributions and efforts of the parties.” Brown v. Brown, 574 So.2d 688, 690 (Miss. 1990); Brendel v. Brendel, 566 So.2d 1269, 1278 (Miss.1990); Jones v. Jones, 532 So.2d 574, 580-81 (Miss.1988); Clark v. Clark, 293 So.2d 447, 450 (Miss.1974). With this opinion, this Court adopts guidelines for application of the equitable distribution method of division of marital property.
The key concept in the equitable division of property is that the property be “marital property” and that it be divided “incident to a divorce.”
¶ 27. However, an exception exists because the equitable powers of the chancery court allow an equitable division of property when the purported marriage, which the parties entered in good faith, turns out to be a void marriage. Chrismond v. Chrismond, 211 Miss. 746, 757, 52 So.2d 624, 629 (1951) (emphasis added). Thus, the question here is whether Fannie entered into her void marriage with Eddie in good faith.
¶28. In Chrismond, the husband and wife were formally married; however, when the marriage began to break down, the husband revealed that he had never divorced his previous wife. Id. at 750, 52 So.2d at 625. The supreme court held that the wife, who believed that she was lawfully married and had no knowledge of the husband’s bigamy, was entitled to an equitable division of property, stating:
We think that the equity powers of the court are sufficient to protect the rights of the putative wife, where the supposed marriage which she entered into in good faith turns out to be void, and that she is entitled to an equitable division of the property accumulated by their joint efforts during the time they lived together as man and wife.
Id. at 757, 52 So.2d at 629 (emphasis added).
¶ 29. The facts of this case are distinguishable from Chrismond. There, the wife had no reason to believe that her marriage was void. She entered the marriage in good faith, and to deny her an equitable distribution of property would have been a truly inequitable result. It was the husband who knew his marriage was void. Here, however, Fannie knew that she had been married to Johnny Tate. *380 She also knew, or should have known, that she had not acquired a divorce from Tate at the time she married Eddie. Fannie testified that she did not get a divorce from Tate. The only evidence that she and Tate ever divorced was her testimony that she received a call from Tate — after she had married Eddie — in which Tate told her that he had gotten a divorce.
¶ 30. I find the chancellor’s ruling that Fannie entered the void marriage in good faith is clearly erroneous, manifestly wrong, contrary to the law of this state and violates public policy. The chancellor stated the following:
Mrs. Cotton appeared to be unaware that she was still married at the time of her marriage to Mr. Cotton, but when questioned further, she indicated that she became aware that her prior marriage had not been dissolved at some later time. The court did notice that Mrs. Cotton was sixteen (16) years old when she married Mr. Tate and only twenty-three (23) years old when she married Mr. Cotton. As a mature adult now, she probably should have understood that she should have been certain that she was divorced from Mr. Tate before marrying Mr. Cotton, as should Mr. Cotton, but they were only 23 and 24 years old when they married, and they obviously did not fully appreciate the importance of being certain that she was divorced before they married.... It appears that the parties entered into their purported marriage in good faith. There was no proof that Mrs. Cotton knew she was still married and concealed that fact from Mr. Cotton. She was merely mistaken about the status of her first marriage.
¶ 31. The supreme court has held that: “All persons are presumed to know the legal effect of their acts.” Crabb v. Wilkinson, 202 Miss. 274, 280, 32 So.2d 356, 358 (1947). Fannie testified that she did not obtain a divorce from Tate. She also testified that she knew nothing about a divorce until after her marriage to Eddie. There is absolutely no evidence in the record to show that Fannie was unaware of the requirement that she first be divorced from her first husband before she could enter into a second marriage.
¶ 32. Even if this were the case, and even if she “did not fully appreciate the importance of being certain that she was divorced,” such reasoning used as the basis to support an equitable distribution of property as if the parties had entered a legal marriage is contrary to the clear public policy of the State of Mississippi in favor and support of lawful marriage. To allow an equitable distribution as the chancellor and the majority have done, in effect, sanctions Fannie’s act of bigamy by giving her the same rights to marital property as a party dissolving a valid marriage. Public policy requires that, in order to avoid the creation of a bigamous relationship, a person should be sure he or she is divorced before attempting to enter a subsequent marriage.
¶ 33. On one occasion, in a split decision, the supreme court awarded support to a wife who purported to marry her second husband before obtaining a divorce from her first husband. Taylor v. Taylor, 317 So.2d 422, 422-23 (Miss.1975). The supreme court made it clear that the ruling was not based on law or equity but on the basis of sympathy, stating:
The facts in this case demonstrate without question that the chancellor did what a decent regard for the sensibilities of humanity demanded.... The chancellor appears to have decided that the strict letter of the law ought not to require him to ignore that he was dealing with human beings.
*381 Id. at 423. Further, the wife was only-awarded $75 per month for three years. Id. at 422. As this Court held in Nichols v. Funderburk, 881 So.2d 266, 270(¶ 15) (Miss.Ct.App.2003): “Granting of monthly support for a limited period of time is not the same as equitable division of property. ...”
¶ 34. The majority holds that there is no requirement of good faith in order for the chancellor to execute an equitable distribution of this couple’s property; instead, it is simply one factor to be considered.[4] However, it is clear from the chancellor’s order that this finding of good faith on the part of Fannie was the basis for the property division pursuant to the annulment. The chancellor found that Fannie was merely young when she married Eddie; therefore, she did not appreciate the requirement that she be divorced from her first husband before she married Eddie. The chancellor concluded: “It appears that the parties entered into their purported marriage in good faith. There was no proof that Mrs. Cotton knew she was still married and concealed that fact from Mr. Cotton. She was merely mistaken about the status of her first marriage.” It was only after making this finding of good faith that the chancellor proceeded to consider the factors for the equitable distribution of the property: the length of the purported marriage, the contribution of each spouse, fault, and etc.
¶ 35. I find that the chancellor erred in holding that Fannie entered into the void marriage in good faith. Because her bigamous relationship rendered her marriage to Eddie void, she is not entitled to an equitable distribution of property. However, she is entitled to her share of the property owned by her and Eddie as joint tenants. Accordingly, I would reverse the judgment of the chancellor and remand this case for the chancellor to distribute the parties’ joint property.
ISHEE AND ROBERTS, JJ., JOIN THIS OPINION.

. The majority states that the Chrismond court did not hold that a showing of good faith is absolutely required for a putative spouse to seek an equitable distribution. As basis for this statement, the majority finds that the Chrismond decision cited as a "leading case" Werner v. Werner, 59 Kan. 399, 53 P. 127 (1898), which does not mention a good-faith requirement. However, a reading of the Chrismond decision reveals that Werner was cited for the proposition that the rule prohibiting an alimony award to a putative spouse does not preclude an equitable distribution of property. Chrismond, 211 Miss. at 758, 52 So.2d at 629. The Chrismond court further states the good-faith requirement must be satisfied by the person seeking an equitable distribution of property, citing both 35 Am.Jur. Marriage § 53 and Krauter v. Krauter, 79 Okla. 30, 190 P. 1088 (1920), for this specific proposition. Id. at 757-59, 52 So.2d at 629.